IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------------- x
:
AKTIESELSKABET AF 21. NOVEMBER :   Case No.: 1:06-CV-00585-RCL
2001, :
:
:
                              Plaintiff, :
:
:
   - vs. - :
:
:
FAME JEANS, INC., :
:
:
                            Defendant. :
:
------------------------------------------------------------------- x

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE COMPLAINT**

Oliver N. Blaise, III, Esq.
(D.C. Dist. Ct. Bar No. NY0066)
COUGHLIN & GERHART, LLP
20 Hawley St, 8th Floor East Tower
P.O. Box 2039
Binghamton, New York 13902-2039
Tel: (607) 723-9511
Fax: (607) 723-1530
E-mail: oblaise@cglawoffices.com

Monica P. McCabe, Esq.
(D.C. Dist. Ct. Bar admission pending)
DLA PIPER RUDNICK GRAY CARY US LLP
1251 Avenue of the Americas, 38th Floor
New York, New York 10020
Tel: (212) 835-6164
Fax: (212) 884-8464
E-mail: monica.mccabe@dlapiper.com

## TABLE OF CONTENTS

Page

CASE HISTORY ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 3

    Point I:    Bestseller has a statutory right to appeal the decision of the TTAB .................... 4

    Point II:   Bestseller has stated a sufficient claim for review of the
TTAB's priority determination ........................................................................... 5

    Point III:  Bestseller has stated a viable equitable claim for
priority to the Mark based on its long-standing and considerable use ................ 8

    Point IV:  Bestseller has stated a viable claim based on
new evidence that was not considered by the TTAB ......................................... 10

CONCLUSION ................................................................................................................. 12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------- x
:
AKTIESELSKABET AF 21. NOVEMBER  : Case No.: 1:06-CV-00585-RCL
2001,                           :
                                :
                                :
             Plaintiff,         :
                                :
    - vs. -                     :
                                :
FAME JEANS, INC.,               :
                                :
             Defendant.         :
------------------------------------------------------------- x

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS THE COMPLAINT

The plaintiff, Aktieselskabet af 21. November 2001 ("**Plaintiff**" or "**Bestseller**"), respectfully submits this memorandum of points and authorities in opposition to the motion of the defendant, Fame Jeans, Inc. ("**Defendant**"), to dismiss the Plaintiff's Complaint pursuant to F.R.C.P. 12(b)(6).

## CASE HISTORY

Plaintiff is a subsidiary of Bestseller A/S, a family-owned Danish company founded in 1975. Since 1990, it has sold millions of dollars worth of clothing under its registered JACK & JONES trademark (the "**Mark**") throughout Europe, the Middle East and China. Indeed, the Mark has become extremely valuable and famous worldwide. Bestseller's jeans are always in high demand and tens of millions of articles of clothing have been sold under the Mark

worldwide. (More information regarding Bestseller and the Mark can be found at www.bestseller.com and www.jackjones.com, respectively.)

By mid-2003, Plaintiff had begun preparations to use the Mark in Canada, which would serve as a North American base from which to research and coordinate use of the Mark in the U.S. Plaintiff applied to register the Mark in Canada on August 11, 2004, and its applications are pending.[1] After achieving much success with the Mark in Canada, Plaintiff applied to register the Mark in the U.S. on December 6, 2004. Plaintiff's application was filed under 15 U.S.C. § 1126(e) ("**Section 44(e)**" of the Trademark Act), based on its prior 1990 Danish registration.

Shortly after Plaintiff began setting up its operations in Canada, the Defendant, a competing Canadian clothing company which was obviously trying to usurp the worldwide goodwill and reputation of the Mark, applied to register the Mark in the U.S. On January 9, 2004, Defendant filed an intent-to-use application under 15 U.S.C. § 1051(b) ("**Section 1(b)**" of the Trademark Act) because it had no use or registration of the Mark anywhere. Once Defendant's mark was published for opposition in the official *Trademark Gazette*, on December 15, 2004, Plaintiff initiated an opposition proceeding with the Trademark Trial and Appeal Board ("**TTAB**"), contesting Defendant's application. On June 20, 2005, after the parties had exchanged written discovery, but before any trial testimony or depositions were taken, Defendant moved for summary judgment based on its earlier filing date of the intent-to-use application. On July 18, 2005, Plaintiff cross-moved for summary judgment based on its Section 44(e) application and equitable claims to the Mark due to long-standing and substantial foreign use.

---

[1] On November 1, 2005, Defendant filed an opposition to Plaintiff's application to register the Mark in Canada, which was denied on February 6, 2006.

On January 30, 2006, the TTAB granted Defendant's motion, finding that Defendant was entitled to rely on the January 9, 2004, filing date as its constructive use date for priority and because Plaintiff did not submit evidence of use of the Mark in U.S. commerce prior to that date. On March 27, 2006, Plaintiff filed a Complaint in U.S. District Court for the District of Columbia seeking judicial review of the TTAB decision, pursuant to 15 U.S.C. § 1071(b)(2006). On July 13, 2006, Defendant filed the present Motion to Dismiss Plaintiff's Complaint pursuant to F.R.C.P. 12(b)(6).

## ARGUMENT

Defendant's motion to dismiss Bestseller's Complaint should be dismissed. In considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to F.R.C.P. 12(b)(6), the Court must construe the allegations and facts in the Complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Massey v. Dist. of Columbia,* No. 05-2033, 2006 U.S. Dist. LEXIS 39039, at *4-5 (D.D.C. June 12, 2006); *see also Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Barr v. Clinton,* 370 F.3d 1196, 1199 (D.C. Cir. 2004). A court should dismiss a claim pursuant to F.R.C.P. 12(b)(6) only if the defendant can demonstrate " 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Massey,* 2006 U.S. Dist. LEXIS 39039, at 5 (citing *Conley,* 355 U.S. at 45-46).

In the present case, Defendant has argued that: (1) Bestseller cannot rely on its Section 44(e) registration to establish priority; and (2) the additional evidence proffered by Bestseller is insufficient to establish priority as a matter of law. Defendant has failed to demonstrate that Bestseller's Complaint is facially insufficient or that there are no grounds upon which Plaintiff can prevail. First, Bestseller has a statutory right to appeal the underlying TTAB

decision pursuant to 15 U.S.C. § 1071(b)(1). Second, Bestseller's Complaint sufficiently challenges the validity of the TTAB's decision to grant summary judgment to Defendant on the basis of priority. Third, Bestseller has stated a viable claim for relief under the Court's equitable powers. Finally, Bestseller's Complaint sufficiently states a claim for appellate review based on the presentation of additional, newly discovered evidence not considered by the TTAB. Accordingly, Defendant has failed to meet its heavy burden under F.R.C.P. 12(b)(6), and its motion to dismiss should be denied.

## Point I

**Bestseller has a statutory right to appeal the decision of the TTAB.**

At page 4 of its Memorandum, Defendant erroneously asserts that "Plaintiff has no legal basis to file a complaint. … " To the contrary, Bestseller has a statutory right to have the underlying TTAB decision reviewed by this Court. According to 15 U.S.C. § 1071(b)(1),

> [w]henever a person … is dissatisfied with the decision of the Director or Trademark Trial and Appeal Board, said person may, unless appeal has been taken to said U.S. Court of Appeals for the Federal Circuit, have remedy by a civil action if commenced within such time after such decision, not less than sixty days, as the Director appoints or as provided in subsection (a) of this section.

*See, e.g., Material Supply Int'l, Inc. v. Sunmatch Indus. Co.,* 146 F.3d 983, 986 (D.C. Cir. 1998) ("15 U.S.C. § 1071(b)(1) … authorizes a party 'dissatisfied' by a decision of the TTAB to bring a civil action in district court"); *Kellogg Co. v. Toucan Golf, Inc.,* 337 F.3d 616, 623 (6th Cir. 2003) ("a party may appeal the TTAB decision, to be reviewed *de novo*, to the United States District Court in any district where venue is proper"); *CAE, Inc. v. Clean Air Eng'g, Inc.,* 267 F.3d 660, 674 (7th Cir. 2001) ("the Lanham Act provides two avenues for review of TTAB decisions: review by the Federal Circuit on the closed record of the TTAB proceedings … or

review by the district court with the option of presenting additional evidence and raising additional claims").

In Paragraph 1 of its Complaint, Bestseller clearly asserts that it is seeking review of the TTAB's decision based on 15 U.S.C. § 1071(b)(1). The Complaint then sets forth the ground upon which Bestseller claims that the TTAB erred in granting Defendant's summary judgment motion: (1) Bestseller has priority over Defendant's Section 1(b) application based on its Section 44(e) application; (2) Bestseller has superior equitable claims to the Mark in the U.S. based on its long-standing and substantial foreign use of the Mark; and (3) Bestseller has additional evidence supporting its rights to the Mark, including research and marketing for use of the Mark in the U.S. Thus, based on Bestseller's statutory right of appeal under 15 U.S.C. § 1071(b)(1) and Bestseller's clearly stated allegations, Defendant's motion to dismiss should be denied.

## Point II

**Bestseller has stated a sufficient claim for review of the TTAB's priority determination.**

Defendant's attempt to make it appear that there is no genuine legal or factual issue concerning the determination of priority to the Mark completely fails. Based upon Section 44(e), it is Bestseller and not Defendant which is entitled to priority. Foreign marks not "in use" in the U.S. will be protected if the applicant meets the requirements of Section 44 of the Trademark Act. Specifically, Section 44(e) allows an owner of a valid foreign registration in its country of origin to register the same mark in the U.S. without proving use if the foreign entity submits a

copy of the foreign registration.[2] In short, Section 44(e) explicitly states that *"use in commerce shall not be required prior to registration."* 15 U.S.C. § 1126(e) (emphasis added).

Section 1(b) of the Trademark Act allows an entity that has not used a mark and that has a bona fide intention, under circumstances showing the good faith of such entity, to use a trademark in commerce and to request registration of the mark. 15 U.S.C. § 1051(b) (2006). In order to perfect the intent-to-use application, the entity must submit a declaration and samples of usage. T.M.E.P. § 806.01(b). Whereas Defendant filed its application under Section 1(b) on an intent-to-use basis, thereby admitting that it has never used the Mark anywhere and cannot *register* the Mark until it proves usage, Bestseller filed under Section 44(e), which allows for U.S. registration based on its foreign registration (and use) of a mark and *without the requirement of showing use in the U.S.* Thus, based on its foreign registrations alone, Bestseller was eligible to register the Mark on the date its application was filed, while, to date, Defendant remains unable to register the Mark.

Contrary to Defendant's assertions, the law governing priority in such a factual scenario is hardly settled and Bestseller should be permitted to present the law and factual circumstances which amply support its case. Without any legal basis, Defendant argued to the TTAB that the date of filing in the U.S. is the only basis for priority determinations concerning applications filed under Section 44(e). Here, it relies on two cases to support that same faulty argument, one of which was vacated and remanded by the Court of Appeals for the Federal Circuit. Neither of

---

[2] Section 44(e) of the Trademark Act reads: "A mark duly registered in the country of origin of the foreign applicant may be registered on the principal register if eligible, otherwise on the supplemental register herein provided. Such applicant shall submit, within such time period as may be prescribed by the Commissioner, a true copy, a photocopy, a certification, or a certified copy of the registration in the country of origin of the applicant. The application must state the applicant's bona fide intention to use the
*(continued on next page)*

those two cases address the crucial issue here – whether a foreign entity is entitled to priority under Section 44(e) based on its foreign registration. The first case cited by Defendant, *General Healthcare Ltd. v. Qashat,* 364 F.3d 332 (1st Cir. 2004), did not involve priority issues under Section 44(e) or Section 44(d). Rather, it dealt with the sufficiency of alleged "use in commerce" as the basis for a common law claim of trademark protection. Similarly, priority was not in dispute in the other case cited by Defendant, *Linville v. Rivard,* 26 U.S.P.Q.2d 1508 (T.T.A.B., *vacated,* 11 F.3d 1074 (Fed. Cir. 1993)). There, the respondent filed his application under Section 44(e) and was awarded trademark protection in the U.S. before his competitor. The case turned on whether respondent subsequently abandoned the mark so that petitioner could obtain cancellation of the registration. Further, Defendant failed to inform this Court that that case was vacated and remanded by *Rivard v. Linville,* 31 U.S.P.Q. 2d 1218 (Fed. Cir. 1993). Accordingly, Defendant has cited not one single valid precedent to support its claim that Plaintiff is not entitled to use its foreign filing date as a basis for establishing priority in the U.S. under Section 44(e).

  As set forth in its Complaint, Plaintiff contends that the TTAB erred when it ruled in Defendant's favor. Plaintiff's application was filed under Section 44(e), which provides for the registration of foreign marks upon proof of foreign registration.

> Reduced to its simplest form, [Section 44(e)] merely means that when a registration of a mark has issued in an applicant's home country … the United States Patent Office will, upon receipt of a properly executed application, a copy of the home registration, a drawing of the mark, and the filing fee, accept the foreign registration at face value and issue a registration in the United States … .

---

mark in commerce, but use in commerce shall not be required prior to registration." 15 U.S.C. § 1126(e) (2006).

NEWY1\8025947.1

*Ex Parte Societe Fromageries Bel*, 105 U.S.P.Q. 392, 398 (Off. Comm'r Pat. & Trademarks 1955). Thus, the purpose of Section 44(e) is to recognize a trademark in this country which has been previously recognized as a trademark in the applicant's country of origin. *In re Fisons Ltd.*, 197 U.S.P.Q. 888, 892 (T.T.A.B. 1978).

Plaintiff asserts that the TTAB misapplied the law concerning Bestseller's superior competing claims to the Mark. As Plaintiff was able to register the Mark on the date of its application, the TTAB should have granted priority to Plaintiff. By granting priority to Defendant's intent-to-use application under Section 1(b), which was ineligible for registration based on Defendant's lack of use,[3] the TTAB disregarded the clear meaning and significance of Section 44(e), which does not require prior use in the U.S. (as opposed to Section 1(b)), and whose purpose "is to have recognized in this country as a trademark … that which is recognized as a trademark in the applicant's country of origin." *In re Fisons Ltd.*, 197 U.S.P.Q. at 893. This was an improper exercise of TTAB's jurisdiction. Accordingly, Plaintiff has stated a sufficient claim to review the TTAB's decision before this Court and Defendant's motion should be denied.

---

[3] At the very least, the TTAB should have suspended the proceedings to see if Defendant ever perfected the Mark by proving use. If Defendant never perfects the Mark, it will have effectively foreclosed Bestseller's opportunity to use its long-standing Mark in the U.S. for years.

Point III

**Bestseller has stated a viable equitable claim for
priority to the Mark based on its long-standing and considerable use.**

Plaintiff has stated a viable claim for relief based on the principles of equity, which are appropriately considered in trademark disputes.[4] "In contrast to patent and copyright law, the concept of priority in the law of trade-marks is applied 'not in its calendar sense' but on the basis of 'the equities involved.' " *Chandon Champagne Corp. v. San Marino Wine Corp.*, 335 F.2d 531, 534 (2d Cir. 1964) (internal citations omitted); *see also* 2 J. Thomas McCarthy, *Trademarks & Unfair Competition* § 16:13 (4th ed. 2006). Indeed, the Lanham Act's legislative history demonstrates that courts were intended to give considerable weight to the principles of equity when making priority determinations:

> The committee does not intend … for constructive use to replace equity. Equity has been and will continue to be the core of U.S. trademark jurisprudence. As the courts have refused to make "calendar priority" based on actual commercial use of a mark determinative of rights if doing so will cause inequity, they should not react differently with construction use.

Senate Judiciary Committee Report on S. 1883, S. Rep. No. 100-515 at 30 (1998). Accordingly, courts have been circumspect of preemptive intent-to-use applications. For example, in *Caesars World, Inc. v. Milanian*, the court found that defendant's intent-to-use application for THE COLLOSEUM mark, filed after Caesars palace hotel and casino publicly announced its intention to create a theater named THE COLLOSEUM AT CAESAR'S PALACE, was made in bad faith. 247 F. Supp. 2d 1171 (D. Nev. 2003), *aff'd,* 126 Fed. Appx. 775 (9th Cir. 2005).

---

[4] Courts are granted broad injunctive (*i.e.*, equitable) powers to review trademark disputes under 15 U.S.C. § 1116(a).

Defendant's motion misunderstands the nature of Plaintiff's equitable claims. Plaintiff is not seeking to obtain priority rights through constructive use, as granted under Section 44(d), based on the date of its foreign filing. Rather, Plaintiff's equitable claims are grounded in its long-standing foreign registrations, significant investment in, and extensive use of the Mark throughout the world. Defendant fails, and likely does not want, to address this aspect of Plaintiff's Complaint and failed to address this aspect of the case in the underlying TTAB proceeding.

Once full discovery is completed in this matter, Bestseller believes that the evidence will show that Defendant, much like the defendant in *Caesars World*, filed the Mark in bad faith. When it filed the Mark, Defendant knew that Bestseller shortly intended to register and use its well-known and valuable Mark in the U.S. Defendant did not want to see Bestseller's success with the JACK & JONES line in Canada continue in the U.S. Unfortunately, Defendant's improper actions have stopped Bestseller from selling its clothing line in the U.S., which it is fully prepared to do. Defendant also sought to trade upon the enormous goodwill and fame associated with the Mark worldwide and "beat" Bestseller to the U.S. Patent and Trademark Office. This situation is exactly what the legislators who enacted the intent-to-use application provisions sought to prevent. *See* Senate Judiciary Committee Report on S. 1883, S. Rep. No. 100-515 at 30. Defendant's "bona fides" are further questioned by the fact that since August 11, 2004, it has taken no steps to actually use the Mark in commerce. It is simply inequitable for an established, long-standing owner of a mark that has spent many millions of dollars promoting its mark to be shut out of the U.S. market because an unbridled competitor filed an "intention" to use that very same mark before the long-standing owner did.

Based on the facts set forth in the Complaint, Plaintiff has more than stated a sufficient claim for this Court to review the underlying TTAB decision based on its equitable powers, which are clearly given in the Lanham Act. Defendant's motion should, therefore, be denied.

## Point IV

### Bestseller has stated a viable claim based on new evidence that was not considered by the TTAB.

It is well established that a district court's review of a TTAB decision pursuant to 15 U.S.C. § 1071(b)(1) is *de novo* and new evidence may be presented. *See, e.g., CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673 (7th Cir. 2001); Trademark Trial and Appeal Board Manual of Procedure §§ 901.01 and 906.01. Thus, it is clear that Bestseller is entitled to present additional evidence in support of its claims to the Mark.

In the proceeding before the TTAB, summary judgment was rendered before Bestseller was able to present all of the proof in support of its claims. For example, Bestseller was unable to present witnesses to testify about its pre-sales activities, such as marketing research and advertisement. Bestseller was also denied the opportunity to depose or question any of Defendant's witnesses about whether its application was filed in good faith. In addition, Bestseller now has newly discovered documentation that was not presented to the TTAB concerning the presence of the Mark in the U.S. prior to Defendant's application.

Pre-sale activity such as advertisement and publicity is relevant when making priority determinations, particularly in peculiar or unique situations, such as the present. *See, e.g., Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151 (9th Cir. 2001) ("totality of the circumstances" must be reviewed re pre-sales activity); *Allard Enters. Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350 (6th Cir. 1998) (soliciting clients established priority even though no transactions occurred); *New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194 (9th Cir. 1979) (pre-sales

publicity and solicitation enough to create priority); *Geo. Wash. Mint, Inc. v. Wash. Mint, Inc.*, 349 F. Supp. 255 (S.D.N.Y. 1972) (pre-sales solicitation established priority). *See, generally,* 2 J. Thomas McCarthy, *Trademarks & Unfair Competition* §§ 16:12, 16:13. In analogous situations, courts have awarded priority based on equitable considerations when a party "rushes to market with a less-than-bona-fide first sale in an attempt to preempt a competitor who is about to make first sales." *Id.* § 16:13 at 16-33. In these circumstances, the courts have found that a party that makes public announcements of a product introduction has established common law rights superior to the competitor attempting to make a preemptive sale. *Id.* (citing *Maryland Stadium Auth. v. Becker,* 806 F. Supp. 1236 (D. Md. 1992); *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F.3d 427 (7th Cir. 1999)). Determinations about the parties' development, marketing and pre-sale use of a mark are factually specific and, thus, Bestseller is entitled to present evidence of such activity. The situation is even more compelling in the present case because Bestseller has newly discovered evidence that the TTAB was not able to consider.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that Defendant's motion to dismiss the Complaint be dismissed in its entirety, together with such other relief that the Court deems appropriate.

Dated: August 4, 2006

                                                     /s/ Oliver N. Blaise, III
Oliver N. Blaise, III, Esq.
(D.C. Dist. Ct. Bar No. NY0066)
COUGHLIN & GERHART, LLP
20 Hawley St, 8th Floor East Tower
P.O. Box 2039
Binghamton, New York 13902-2039
Tel: (607) 723-9511
Fax: (607) 723-1530
E-mail: oblaise@cglawoffices.com

Monica P. McCabe, Esq.
(D.C. Dist. Ct. Bar admission pending)
DLA PIPER RUDNICK GRAY CARY US LLP
1251 Avenue of the Americas, 38th Floor
New York, New York 10020
Tel: (212) 835-6164
Fax: (212) 884-8464
E-mail: monica.mccabe@dlapiper.com