IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------------- x
:
AKTIESELSKABET AF 21. NOVEMBER 2001,    :   Case No.: 1:06-CV-00585-RCL
Fredskovvej 5, 7330 Brande, Denmark,    :
:
:
:
           Plaintiff,                   :
:
:
     - v. -                             :
:
:
FAME JEANS, INC., 6650 Cote de Liesse, St. :
Laurent, Quebec H4T 1E3, Canada,        :
:
:
           Defendant.                   :
---------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION TO AMEND COMPLAINT

Oliver N. Blaise, III, Esq.
(D.C. Dist. Ct. Bar No. NY0066)
COUGHLIN & GERHART, LLP
20 Hawley Street, 8th Floor East Tower
P.O. Box 2039
Binghamton, New York 13902-2039
Tel: (607) 723-9511
Fax: (607) 723-1530
E-mail: oblaise@cglawoffices.com

Monica P. McCabe, Esq.
(D.C. Dist. Ct. Bar No. 411426)
DLA PIPER RUDNICK GRAY CARY US LLP
1251 Avenue of the Americas, 38th Floor
New York, New York 10020
Tel: (212) 335-4500
Fax: (212) 884-8464
E-mail: monica.mccabe@dlapiper.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

*Page*

BACKGROUND ........................................................................................................................... 1

Action Before The Trademark Trial And Appeal Board ............................................................... 4

LEGAL ARGUMENT ................................................................................................................... 6

    A.    The Legal Standard For Amending A Pleading Is Extremely Liberal ....................... 6

    B.    The New Claims Added To The Amended Complaint Are Well Supported ............. 6

CONCLUSION ............................................................................................................................ 10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------- x
:
AKTIESELSKABET AF 21. NOVEMBER 2001,   :   Case No.: 1:06-CV-00585-RCL
Fredskovvej 5, 7330 Brande, Denmark,   :
:
:
Plaintiff,   :
:
:
- v. -   :
:
:
FAME JEANS, INC., 6650 Cote de Liesse, St.   :
Laurent, Quebec H4T 1E3, Canada,   :
:
:
Defendant.   :
------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION TO AMEND COMPLAINT**

Plaintiff, Aktieselskabet af 21. November 2001 ("**Plaintiff**"), by and through its counsel, as and for its Motion to Amend the Complaint against defendant, Fame Jeans, Inc. ("**Defendant**"), respectfully represents as follows:

**Background**

Bestseller A/S is a Danish company founded in 1975 by the Holch Povlsen family, with its primary office located at Fredskovvej 5, 7330 Brande, Denmark. It has used the Jack & Jones trademark on clothing since 1990. Plaintiff, founded in 2001, is an affiliated company of Bestseller A/S and has the same address. Plaintiff holds Bestseller's rights to, and interests in, the "Jack & Jones" trademarks at issue in this action and licenses them to Bestseller A/S. For the sake of convenience, the Plaintiff will hereinafter be referred to as "**Bestseller**." Defendant is a

Canadian company with its primary office located at 6650 Cote de Liesse, St. Laurent, Quebec H4T 1E3, Canada.

Since 1990, Bestseller has been using, and has registered, the Jack & Jones mark on its clothing products and other goods throughout Europe, the Middle East, Asia, and South America. Bestseller is using and has registered five variations of the Jack & Jones mark, including the word mark "Jack & Jones," the word mark combined with a logo, a "JJ" logo mark, the word mark "Dust by Jack & Jones" and the word mark "Discreet by Jack & Jones." In total, Bestseller has filed 118 registrations covering forty-six countries in various international classes for the Jack & Jones marks. In addition, it has sixty-nine applications pending for registration of the marks. Hence, Bestseller has created a very valuable family of "Jack & Jones" marks around the world.

By mid-2003, Bestseller had undertaken preparations to use the Jack & Jones marks in Canada. Bestseller intended that its Canadian operations would serve as a North American base from which to research and coordinate its use of the Jack & Jones marks in the United States.

Bestseller and Fame Jeans are business rivals in the competitive clothing industry, especially with respect to the sale of jeans and related items, around the world and in particular in Canada. Fame Jeans and Bestseller come into contact and are involved with the same individuals and entities in the Canadian clothing industry on a regular basis. Upon information and belief, Fame Jeans knew that Bestseller planned to expand its operations and use of the Jack & Jones marks in the United States.

Bestseller applied to register the Jack & Jones marks (word mark as well as the word mark and logo) in Canada on August 11, 2004 (Application Nos. 1226720 and 1226721), and its applications are pending. Fame Jeans filed oppositions to Bestseller's Canadian applications on

November 1, 2005, which were dismissed by the Canadian Intellectual Property Office on February 6, 2006.

Bestseller's business has been enormously successful. The average price for clothing under the Jack & Jones trademark runs from 13.50 euros for a t-shirt to 54.00 euros for a jacket. Its jeans (which average in price approximately 67.00 euros) are always in high demand. Tens of millions of articles of clothing have been sold under the Jack & Jones marks worldwide. In 2001, 5,000,000 pieces of clothing were sold in the European Union, and in 2003, 7,000,000 pieces were sold there. The number increased dramatically to 14,000,000 in 2004 and 19,000,000 in 2005. Indeed, Bestseller has over 4,000 wholesale customers for its Jack & Jones branded clothing in Europe, the Middle East, and Russia. In the European Union, the number of Jack & Jones stores has steadily increased from 161 in 2001 to 245 in 2003 to 439 presently. In China, Bestseller has 315 Jack & Jones stores.

Besides its extremely valuable family of marks, Bestseller also owns twenty-one domain names containing the Jack & Jones trademarks including jack-jones.com, jackjones.biz, jackjones.tm, and jack-jones.com.es. The Jack & Jones Web site has been available in English since 1997.

Bestseller has spent millions of dollars on advertising and promoting its Jack & Jones marks around the world. Further, between January 2002 and May 2006, Bestseller has spent almost 1,400,000 euros on registering and protecting its marks worldwide. As a result, the family of marks has become extremely valuable and famous worldwide.

Access to Jack & Jones branded clothing has been available to U.S. consumers through Bestseller's foreign customers and stores as well as through re-sales on eBay.com.

Upon information and belief, in an attempt to thwart Bestseller's planned expansion into the United States and to trade on the worldwide fame and goodwill of the marks, Fame Jeans filed an application with the United States Patent and Trademark Office ("**USPTO**") on January 9, 2004, seeking to register the Jack & Jones mark for use on clothing items in International Class 25 (Application Serial No. 78/350085). At the time of its filing, Fame Jeans had never used the Jack & Jones mark in commerce in the United States, or anywhere else. Its application was an "intent-to-use" ("**ITU**") application, based on 15 U.S.C. § 1051(b) ("**Section 1(b)**"). Upon information and belief, Fame Jeans has never used the Jack & Jones mark anywhere in the world.

On December 6, 2004, Bestseller filed an application with the USPTO to register the Jack & Jones mark for use on clothing items in International Class 25. Based on its numerous foreign registrations and longstanding use of the Jack & Jones mark in Europe the Middle East and Asia, Bestseller applied to register Jack & Jones in the United States pursuant to 15 U.S.C. § 1126(e) ("**Section 44(e)**"). Specifically, Bestseller's application was based on its 1990 Danish registration (06.569.1990) of the mark for clothing in International Class 25, and stated its bona fide intention to use the Jack & Jones mark in US commerce in connection with the goods in Class 25.

### Action Before The Trademark Trial And Appeal Board ("TTAB")

On December 15, 2004, Bestseller timely initiated an opposition proceeding with the TTAB (Opposition No. 91163436) contesting Fame Jeans's application to register the Jack & Jones mark for clothing ("**Defendant's Application**"). In its Notice of Opposition, Bestseller alleged that because the goods listed in both applications were virtually identical and the marks themselves were exactly the same, it was likely to be damaged by registration of the mark shown

- 4 -

in Defendant's Application on the basis that such mark would cause a likelihood of confusion with Bestseller's Jack & Jones mark, falsely suggests a connection between Fame Jeans and Bestseller, threatens Bestseller's valuable goodwill in the mark and interferes with Bestseller's right to register the mark in the United States.

On January 21, 2005, Defendant filed an Answer denying the allegation of Bestseller's Notice of Opposition. Subsequently, the parties engaged in limited document discovery only. Despite Bestseller's proper requests to Fame Jeans to produce documents and information regarding its selection, adoption, searches and research regarding the Jack & Jones mark, Fame Jeans refused to do so on an alleged claim of attorney-client privilege.

Before Bestseller had an opportunity to challenge Fame Jeans's claim of attorney-client privilege, Fame Jeans filed a motion for summary judgment with the TTAB on June 20, 2005, alleging that it had priority to register the Jack & Jones mark based solely on its earlier application date under Section 1(b). On July 18, 2005, Bestseller cross-moved for summary judgment on the grounds that it had superior rights to register the Jack & Jones mark based on its application under Section 44(e) and its equitable rights based on its longstanding and widespread use of the mark.

On January 30, 2006, the TTAB issued a final decision granting Fame Jeans's motion for summary judgment, and denying Bestseller's cross-motion. A copy of the TTAB's decision is attached as Exhibit 1.

As Bestseller asserted to the TTAB, the marks sought to be registered by the parties are identical and are for virtually identical goods, so that both parties cannot register the mark without a likelihood of confusion among consumers. The decision of the TTAB in favor of Fame Jeans is erroneous.

# LEGAL ARGUMENT

### A.  The Legal Standard For Amending A Pleading Is Extremely Liberal

It is well settled that under the liberal standards of Federal Rule of Civil Procedure 15(a), leave to amend should be freely given. *See Foman v. Davis,* 371 U.S. 178 (1962). "Although the grant or denial of leave to amend is committed to a district court's discretion, it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive[,] repeated failure to cure deficiencies by [previous] amendments [or] futility of amendment.'" *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C. Cir. 1996) (*quoting Foman,* 371 U.S. at 182). Further, a plaintiff is permitted to amend a complaint to state a new legal theory, absent a showing of prejudice by the defendant. *Harrison v. Rubin,* 174 F.3d 249, 253 (D.C. Cir. 1999) (citations omitted) (finding that "a plaintiff is not bound by the legal theory on which he or she originally relied" unless a defendant can prove that it will be prejudiced on the merits by such a change) (internal quotation omitted).

At this early stage in the litigation, Defendant will suffer no prejudice in the case of an amendment. There is no evidence of bad faith or dilatory motive on the part of Bestseller in seeking to amend, Bestseller has not previously amended the Complaint, and amendment would not be futile based upon the legal analysis below. Finally, Bestseller has recently retained co-counsel to assist in its efforts to oppose Defendant's application. As such, Bestseller should be afforded the opportunity to amend the Complaint to allege bad faith.

### B.  The New Claims Added To The Amended Complaint Are Well Supported

Under § 1(b) of the Trademark Act, an ITU application may be filed if the applicant "has a bona fide intention, under circumstances showing the good faith of such person, to use a trademark in commerce." 15 U.S.C. § 1051(b)(2006). Evidence must demonstrate both

objective circumstances and subjective state of mind indicating good faith. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 19:14 (4th ed. 2006). The validity of an ITU application can be challenged on the ground that the applicant lacked the required bona fide intention to use the mark on the listed goods or services, even if the ITU applicant has filed an application to register the mark prior to the challenger. *Salacuse v. Ginger Spirits, Inc.*, 44 U.S.P.Q.2d 1415, 1997 WL 687374, at *5 (T.T.A.B. Sept. 12, 1997). The TTAB has flatly rejected the idea that "the mere pendency of [a] prior-filed intent-to-use application[] is dispositive of the priority issue" when bad faith is alleged. *Id.* at *4.

Under the rules promulgated by the USPTO, an applicant must certify that all of the statements made in its filings with the USPTO are true and do not contain misrepresentations. TMEP § 602.02. If a trademark application contains a false statement or misrepresentation, the validity of that application is jeopardized and the application will be rejected. *Id.* Thus, if Fame Jeans's application contains a misstatement, Fame Jeans will not be able to establish any rights to the Jack & Jones mark.

Courts look to the nature of a prior ITU applicant's activities with respect to the use of the mark in deciding whether a bona fide intention to use exists. For example, in *Advertising to Women, Inc. v. Gianni Versace S.p.A,* plaintiff filed an ITU application for the "eau de Blonde" mark in March 1994, while defendant filed a registration application for its "Versace's Blonde" mark in May 1996. No. 98 C 1553, 2000 U.S. Dist. LEXIS 12490, at *4 (N.D. Ill. Aug. 24, 2000). After defendant used the mark, plaintiff brought an action against defendant alleging trademark infringement, unfair competition, and false designation of origin under the Lanham Act and under common law. *Id.* at **5-6. Defendant conceded that plaintiff's registration was prior to its own, but argued that plaintiff's mark "is invalid because it was filed without a 'bona

fide' intent to use the mark in commerce and it obtained registration based on a false attestation that the 'eau de Blonde mark' was in fact lawfully used in commerce." *Id.* at **11-12.

The court found that a material fact issue existed as to whether plaintiff's intent to use and actual use of its mark in commerce as of the application filing date was bona fide, as opposed to action made merely to reserve a mark. *Id.* at **13-14. The court rested its decision on the fact that plaintiff's actual use of the mark was extremely limited, consisting of its placement in one pharmacy in Illinois, and, therefore "its bona fide nature is best resolved at trial and upon a full exposition of the evidence." *Id.* *5, *15.

In *Person's Co., Ltd. v. Christman,* a case cited by Defendant in its Reply in Support of its Motion to Dismiss, filed on July 13, 2006, the Court stated that the copying of a mark in use in a foreign country but not in the U.S. can constitute bad faith if "the foreign mark is famous in the United States or the copying is undertaken for the purpose of interfering with the prior user's planned expansion into the United States." 900 F.2d 1565, 1568, 1570 (Fed.Cir. 1990).

In addition, ITU applicants that file preemptively to trade upon the fame of another's use of a mark may be found to have violated the good faith requirement. For instance, in *Caesars World, Inc. v. Milanian,* defendant filed an ITU application for THE COLLOSEUM mark after Caesars Palace Hotel and Casino announced its intention to create a theater named THE COLLOSEUM AT CAESAR'S PALACE. 247 F. Supp. 2d 1171 (D. Nev. 2003). The court stated that "in order to prevent the intent to use amendments from being abused, the Lanham Act was also amended to clarify that 'use in commerce' means 'the bona fide use of the mark in the ordinary course of trade, and not made merely to reserve a right in a mark.'" *Id.* at 1191. The court found that defendant's ITU application was made in bad faith in an attempt to capitalize on plaintiff's goodwill. *Id.*

As the case law makes clear, a prior ITU filing may be invalidated based on bad faith if any of the following circumstances exist: the applicant is attempting to trade on the renown or use of the mark; the applicant has made only limited use of the mark in the U.S.; or the applicant was aware of the prior foreign user's plans to introduce the mark in the U.S. Based upon the information that it presently has and hopes to obtain in complete discovery in the present action, Bestseller believes that all of these circumstances are present in this case. Discovery will show that Defendant sought to trade upon the enormous goodwill and fame associated with the mark worldwide and "beat" Bestseller to the USPTO. Additionally, since January 2004, when it filed its application in the U.S., Defendant has taken no steps to actually use the mark in commerce. Defendant's contention that it has not used the mark because of the present conflict with Bestseller does not explain why no steps were taken during the period of almost an entire year before Bestseller filed its Notice of Opposition on December 15, 2004. Finally, because Bestseller and Fame Jeans are competitors in the clothing industry and have the same contacts in the industry, Defendant likely knew that Bestseller shortly intended to register and use its well-known and valuable mark in the U.S.

In the proceeding before the TTAB, summary judgment was rendered before Bestseller had the opportunity to depose or question any of Defendant's witnesses concerning Defendant's bona fide intention in filing its application. Further, despite Bestseller's proper requests to Defendant to produce any documents or other information concerning its selection, adoption, searches and research regarding the Jack & Jones mark, Defendant refused to do so on an alleged claim of attorney-client privilege. Bestseller should have the opportunity to discover all of the evidence relevant to its claims as Defendant's improper actions have effectively stopped Bestseller from selling its clothing line and other Jack & Jones products in the U.S.

## Conclusion

For the reasons stated above, because leave to amend is freely granted, and because the Defendant will in no way suffer any unfair or undue prejudice by allowing such amendment, Bestseller respectfully requests that the Court grant Plaintiff's Motion to Amend Complaint and accept for filing Plaintiff's Amended Complaint in the form attached hereto as Exhibit A.

Dated: August 30, 2006

        /s/ Oliver N. Blaise, III
Oliver N. Blaise, III, Esq.
(D.C. Dist. Ct. Bar No. NY0066)
COUGHLIN & GERHART, LLP
*Attorneys for Plaintiff*
20 Hawley Street, 8th Floor East Tower
P.O. Box 2039
Binghamton, New York 13902-2039
Tel: (607) 723-9511
Fax: (607) 723-1530
E-mail: oblaise@cglawoffices.com

Monica P. McCabe, Esq.
(D.C. Dist. Ct. Bar No. 411426)
DLA PIPER RUDNICK GRAY CARY US LLP
*Attorneys for Plaintiff*
1251 Avenue of the Americas, 38th Floor
New York, New York 10020
Tel: (212) 335-4500
Fax: (212) 884-8464
E-mail: monica.mccabe@dlapiper.com