# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------- x

AKTIESELSKABET AF 21. NOVEMBER 2001,
Fredskovvej 5, 7330 Brande, Denmark,

                       Plaintiff,

      - v. -

FAME JEANS, INC., 6650 Cote de Liesse, St.
Laurent, Quebec H4T 1E3, Canada,

                    Defendant.

------------------------------------------------------------- x

Case No.:  1:06-CV-00585-RCL

## SURREPLY MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT, FAME JEANS, INC.'S RENEWED MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Oliver N. Blaise, III, Esq.
(D.C. Dist. Ct. Bar No. NY0066)
COUGHLIN & GERHART, LLP
20 Hawley Street, 8th Floor East Tower
P.O. Box 2039
Binghamton, New York 13902-2039
Tel:  (607) 723-9511
Fax:  (607) 723-1530
E-mail:  oblaise@cglawoffices.com

Monica P. McCabe, Esq.
(D.C. Dist. Ct. Bar No. 411426)
DLA PIPER RUDNICK GRAY CARY US LLP
1251 Avenue of the Americas, 38th Floor
New York, New York 10020
Tel:  (212) 335-4500
Fax:  (212) 884-8464
E-mail:  monica.mccabe@dlapiper.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

*Page*

Introduction ......................................................................................................................... 1

Legal Argument ................................................................................................................... 2

Conclusion .......................................................................................................................... 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
----------------------------------------------------------- x
                                                           :
AKTIESELSKABET AF 21. NOVEMBER 2001,                       :     Case No.:  1:06-CV-00585-RCL
                                                           :
                                    Plaintiff,             :
                                                           :
                                                           :
        - v. -                                             :
                                                           :
FAME JEANS, INC.,                                          :
                                                           :
                                                           :
                                    Defendant.             :
                                                           :
                                                           :
----------------------------------------------------------- x
```

## SURREPLY MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT, FAME JEANS, INC.'S RENEWED
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### Introduction

Plaintiff, Aktieselskabet af 21. November 2001 ("**Plaintiff**" or "**Bestseller**"), by and through its counsel, respectfully submits this surreply memorandum of law ("**Surreply**") in opposition to Defendant, Fame Jeans, Inc.'s ("**Defendant**") Memorandum of Law in Support of the Renewed Motion to Dismiss Plaintiff's Amended Complaint ("**Memo in Support**").

Bestseller submits this Surreply to advise this Court of significant new precedent relevant to the case at bar which the U.S. Court of Appeals for the Federal Circuit decided after Bestseller submitted its Memorandum of Law in Opposition to Defendant, Fame Jeans, Inc.'s Renewed Motion to Dismiss Plaintiff's Complaint ("**Memo in Opposition**").  Counsel for Defendant has informed counsel for Plaintiff that Defendant will not oppose this Surreply.

**Legal Argument**

As Bestseller earlier noted in its Memo in Opposition (p. 9, footnote 9), and contrary to

Defendant's claims in its Memo in Support (p. 5), Bestseller is not required to show "use 'in

commerce' " to bring a successful opposition against Defendant, as set forth in *First Niagara*

*Ins. Brokers, Inc. v. First Niagara Financial Group, Inc.,* 476 F.3d 867, 871, 81 U.S.P.Q.2d

(BNA) 1375, 1378 (Fed. Cir. 2007)..

In *First Niagara,* the Federal Circuit overturned the Trademark Trial and Appeal Board

("T.T.A.B.") because the T.T.A.B. based its decision on the erroneous assumption that an

opposer's claim of prior use can succeed only if it has proved use of its marks in connection with

goods or services rendered in commerce lawfully regulated by Congress, as required under

Section 45 of the Trademark Act.  The court explicitly stated:

> Such an assumption is unwarranted, however, in light of the plain
> language of the statute, which merely requires the prior mark to
> have been "used in the United States by another."  15 U.S.C.
> § 1052(d).  *See Nat'l Cable Television Ass'n v. Am. Cinema
> Editors, Inc.,* 937 F.2d 1572, 1578 n.4 (Fed. Cir. 1991).

*First Niagara Ins. Brokers, Inc.,* 476 F.3d at 870, 81 U.S.P.Q.2d at 1378.  The court also cited

*McCarthy on Trademarks and Unfair Competition* to support further its holding that "there is no

requirement in Section 43(a) that the plaintiff who invokes that statute must have used the mark

in U.S. interstate or foreign commerce." *Id.,* citing J. Thomas McCarthy, § 29:4, at 29-22 (4th

ed. 2006).  The court concludes, "[t]hus, a foreign opposer can present its opposition on the

merits by showing only use of its mark in the United States." *First Niagara Ins. Brokers, Inc.,*

476 F.3d at 871, 81 U.S.P.Q.2d at 1378.

Despite the fact that the plaintiff in *First Niagara* burdened itself with a "higher hurdle

than necessary," the court held that it was required to show only use of the marks and not "use

'in commerce.' " *Id.*  Like Bestseller in the present case, the plaintiff in *First Niagara* had

continuous operation in Canada close to the U.S. border, but no physical presence or license to do business in the United States.[1] The plaintiff, however, did have connections to the United States as Bestseller does. For example, the plaintiff sold insurance policies through domestic U.S. brokers to U.S. citizens having property in Canada. Similarly, Bestseller sells its "Jack & Jones" branded clothing to U.S. citizens who shop in Canada and a number of other countries where U.S. citizens travel. As discussed at length in Bestseller's Memo in Opposition (pp. 8-9), Bestseller has clothing bearing the "Jack & Jones" trademark available to Americans overseas, on the Internet, and through resales on eBay.com. It has also promoted the mark in the United States at sporting events and in publications circulated to, or purchased by, American citizens. In light of the holding in *First Niagara*, Bestseller respectfully asserts that it should be allowed to litigate its claims and present newly discovered evidence of its use of the "Jack & Jones" mark in the United States.

Ultimately, the court in *First Niagara* found that the T.T.A.B. erred in dismissing the plaintiff's opposition because, under the correct test, the record revealed ample use of the plaintiff's marks in the United States to satisfy the use requirements of Section 2(d). *Id.* Here, too, Bestseller has ample evidence of its use of the "Jack & Jones" mark in the United States, and its Amended Complaint should not be dismissed.

---

[1] Bestseller has also argued that it need not show any use in the United States based upon its 1990 Danish registration under Section 44(e) of the Lanham Act to have priority over Defendant's application. 15 U.S.C. § 1126(e). Under Section 44(e), no use need be shown in the United States to obtain a registration. *Id.* A recent T.T.A.B. decision confirms the fact that an applicant relying on Section 44(e) has priority over a prior user of a disputed mark in the United States. *See Mario Diaz v. Servicios De Franquicia Pardo's S.A.C.,* Opposition No. 91159871 (February 16, 2007). A copy of the decision is attached hereto.

- 3 -

## **Conclusion**

Based upon the new precedent discussed above and upon its prior submissions, Bestseller respectfully requests that this Court deny Defendant's Renewed Motion to Dismiss Plaintiff's Complaint.

Dated:  March 26, 2007

_____/s/ Oliver N. Blaise, III_____
Oliver N. Blaise, III, Esq.
(D.C. Dist. Ct. Bar No. NY0066)
COUGHLIN & GERHART, LLP
*Attorneys for Plaintiff*
20 Hawley Street, 8th Floor East Tower
P.O. Box 2039
Binghamton, New York 13902-2039
Tel:  (607) 723-9511
Fax:  (607) 723-1530
E-mail:  oblaise@cglawoffices.com

Monica P. McCabe, Esq.
(D.C. Dist. Ct. Bar No. 411426)
DLA PIPER RUDNICK GRAY CARY US LLP
*Attorneys for Plaintiff*
1251 Avenue of the Americas, 38th Floor
New York, New York 10020
Tel:  (212) 335-4500
Fax:  (212) 884-8464
E-mail:  monica.mccabe@dlapiper.com

NEWYI\8090368.1

```
THIS OPINION IS PRECEDENT
     OF THE T.T.A.B.
```

**UNITED STATES PATENT AND TRADEMARK OFFICE**
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, Virginia 22313-1451

Lykos

Mailed: February 16, 2007

Opposition No. 91159871

Mario Diaz

v.

Servicios De
Franquicia Pardo's
S.A.C.

Before Walters, Hairston and Zervas, Administrative
Trademark Judges.

By the Board:

I.    *Introduction*

On November 14, 2002, Servicios De Franquicia Pardo's

S.A.C. ("applicant") applied to register the mark PARDO'S

CHICKEN in the stylization displayed below



Opposition No. 91159871

for "eat-in and take-out restaurant services" in International Class 43.[1]  The application is based on a Peruvian registration for the same stylized mark and services pursuant to Section 44(e) of the Lanham Act.[2]

Mario Diaz ("opposer") has opposed registration on the grounds that applicant's applied-for mark so resembles opposer's previously used PARDO'S CHICKEN mark that it is likely to cause confusion, mistake, or deceive prospective consumers under Section 2(d) of the Lanham Act.  As to the issue of priority, opposer alleges in his notice of opposition use of his mark in the United States in connection with restaurant services prior to the filing date of applicant's application without pleading ownership of a U.S. federal registration or application.

Applicant, in its answer to the notice of opposition, denies the salient allegations and asserts various affirmative defenses, including the following:

### Twelfth Affirmative Defense

Opposer, a Peruvian individual, is well aware of the high-value and market presence of the "Pardo's Chicken" trademark.  He is also aware of its brand recognition among the Peruvian

---

[1] Application Serial No. 76467468.  The application includes a statement that the English translation of "PARDO'S CHICKEN" is "brownish-gray chicken," as well as a claim of acquired distinctiveness under Section 2(f).

[2] Peruvian Registration No. 012449, registered on February 17, 1997, for "restaurant services" in International Class 42, with an expiration date of February 17, 2007.

Opposition No. 91159871

communities within The United States of America.
The Opposer in question is seeking registration
of a mark that cannot be registered in his name
(individually), if we apply the common law.  If
we apply the current regulations, his
application for registration and his opposition
have to be denied because the trademark has an
owner, an owner who has applied for the
recognition of its trademark under Federal Law §
44(e) (15 U.S.C. § 1126) since The United States
of America and the Republic of Peru are
signatories of the same treaty.

This case now comes up for consideration of applicant's

motion for summary judgment on the ground that applicant has

priority over opposer based on Article 7 of the General

Inter-American Convention for Trademark and Commercial

Protection of Washington, 1929 ("Pan American Convention"),

46 Stat. 2907, and that therefore opposer cannot as a matter

of law prevail on his Section 2(d) claim.[3]  The motion is

fully briefed.[4]

At the outset, we note that applicant has not moved to

amend its pleading to specifically assert an affirmative

defense of priority based on Article 7 of the Pan American

---

[3] Applicant filed its motion for summary judgment on December
29, 2004.  Opposer, in lieu of filing a responsive brief, filed
a motion to take discovery pursuant to Fed. R. Civ. P. 56(f).
On November 29, 2005, the Board granted opposer's Rule 56(f)
motion to the extent that it allowed opposer time to take the
deposition of Mr. Arnold H. Wu, an officer of applicant, on the
issue of applicant's bona fide intent to use its involved mark
in commerce.  Following the taking of the deposition of Mr. Wu,
opposer filed a responsive brief in opposition to applicant's
motion for summary judgment on January 27, 2006.

[4] Applicant has submitted a reply brief which the Board
has exercised its discretion to consider because it
clarifies the issues herein.  See Trademark Rule 2.127(a).

3

Opposition No. 91159871

Convention.  Ordinarily, a party may not obtain summary judgment on an issue that has not been pleaded.  *See* Fed. R. Civ. P. 56(a) and 56(b).  However, the parties have treated the issue on its merits in their briefs and opposer has not objected to applicant's motion on the ground that applicant failed to plead the defense.  In addition, we construe the last clause of applicant's twelfth affirmative defense noted above as alluding to the Pan American Convention.  For these reasons, the Board deems the twelfth affirmative defense asserted by applicant to have been amended to allege that applicant has priority over opposer pursuant to Article 7 of the Pan American Convention.  *See Paramount Pictures Corp. v. White,* 31 USPQ2d 1768 (TTAB 1994); *see also Saint-Gobain Abrasives, Inc. v. Unova Industrial Automation Systems, Inc.,* 66 USPQ2d 1355 (TTAB 2003).

I.   *Background – The Pan American Convention*

By way of background, the United States is a party to the Pan American Convention with several Latin American nations, including Peru.[5]  The Convention pertains to trademarks, trade names, unfair competition, and false indications of geographical origin or source.  The beneficiaries under the Convention are defined as

_____

[5] The remaining countries to the Convention are Colombia, Cuba, Guatemala, Haiti, Honduras, Nicaragua, Panama, and Paraguay.

4

Opposition No. 91159871

(1) nationals of contracting states, and (2) domiciled foreigners who own a manufacturing or commercial establishment or an agricultural development in any of the contracting states.

The Board's most notable decision involving the Pan American Convention is *British-American Tobacco Co. v. Phillip Morris Inc.,* 55 USPQ2d 1585 (TTAB 2000) ("*British-American Tobacco*").[6]  In that case, the Board denied respondent's motion to dismiss and held that it had the requisite jurisdiction to consider petitioner's claim brought under Article 8 of the Pan American Convention in a cancellation proceeding.  Article 8 of the Convention provides as follows:

> When the owner of a mark seeks the registration or deposit of the mark in a Contracting State other than that of origin of the mark and such registration or deposit is refused because of the previous registration or deposit of an interfering mark, he shall have the right to apply for and obtain the cancellation or annulment of the interfering mark upon proving, in accordance with the legal procedure of the country in which cancellation is sought, the stipulations in Paragraph (a) and those of either Paragraph (b) or (c) below:
>
> (a)   That he enjoyed legal protection for his mark in another of the Contracting States prior to the date of the application for the registration or deposit which he seeks to cancel; and

---

[6] Respondent's request for reconsideration was denied by the Board in an unpublished opinion issued February 27, 2001.

5

Opposition No. 91159871

    (b) That the claimant of the interfering mark, the cancellation of which is sought, had knowledge of the use, employment, registration or deposit in any of the Contracting States of the mark for the specific goods to which said interfering mark is applied, prior to adoption and use thereof or prior to the filing of the application or deposit of the mark which is sought to be cancelled; or

    (c) That the owner of the mark who seeks cancellation based on a prior right to the ownership and use of such mark, has traded or trades with or in the country in which cancellation is sought; and that goods designated by his mark have circulated and circulate in said country from a date prior to the filing of the application for registration or deposit for the mark, the cancellation of which is claimed, or prior to the adoption and use of the same.

Consistent with the Supreme Court's decision in *Bacardi Corporation of America v. Domenech,* 311 U.S. 150, 161, 47 USPQ 350, 355 (1940) ("*Bacardi*"), the Board noted that the Pan American Convention is self-executing, and therefore became U.S. law upon ratification, requiring no special implementing legislation.  As such, the Board concluded that the Convention has the same force as a federal statute and provides remedies independent of the Lanham Act.

The Board then considered the issue of whether Article 8 of the Pan American Convention created a cause of action within the Board's subject matter jurisdiction.  The Board reasoned that since it was authorized under the Lanham Act to determine the registerability of marks in the context of

Opposition No. 91159871

*ex parte* appeals and *inter partes* proceedings, it had the requisite jurisdiction to consider a claim brought before it under Article 8 because that article expressly related to the registerability of marks.  Lastly, the Board found that a finding of jurisdiction did not violate the doctrine of territoriality but rather constituted an exception to the doctrine explicitly created by the Convention.[7]

III. *Does Article 7 of the Pan American Convention Afford Applicant the Affirmative Defense of Priority in this Opposition Proceeding?*

To prevail on his asserted Section 2(d) claim, opposer must establish (1) that he has standing to maintain the proceeding; (2) that he is the prior user of his pleaded mark; and (3) that contemporaneous use of the parties' respective marks on their respective services would be likely to cause confusion, mistake or to deceive consumers. *See Hornblower & Weeks, Inc. v. Hornblower & Weeks, Inc.*, 60 USPQ2d 1733 (TTAB 2001).  Priority of use is an issue in this case because opposer failed to plead and prove

---

[7] Under the doctrine of territoriality as it pertains to trademarks, "trademark rights exist in each country solely according to that country's statutory scheme." *J. Thomas McCarthy, 4 McCarthy on Trademarks and Unfair Competition* § 29:1, pp. 29-4, 29-5 (4th ed. 2000) *citing Person's Co. v. Christman*, 900 F.2d 1565, 14 USPQ2d 1477 (Fed. Cir. 1990) ("*Person's*").  The Board's determination in *British-American Tobacco* is distinguishable from the conclusion reached in *Person's*, where the Board held that prior use of a mark in a foreign country does not create priority rights in the United States under the doctrine of territoriality, because no self-executing treaty was involved in the *Person's* case.

7

Opposition No. 91159871

ownership of a registration that would preclude registration of applicant's mark under Section 2(d).  *See King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108 (CCPA 1974).

Applicant has moved for summary judgment by asserting priority under Article 7 of the Pan American Convention as an affirmative defense to opposer's Section 2(d) claim. Article 7 provides as follows:

> Any owner of a mark protected in one of the contracting states in accordance with its domestic law, who may know that some other person is using or applying to register or deposit an interfering mark in any other of the contracting states, shall have the right to oppose such use, registration or deposit and shall have the right to employ all legal means, procedure or recourse provided in the country in which such interfering mark is being used or where its registration or deposit is being sought, and upon proof that the person who is using such mark or applying to register or deposit it, had knowledge of the existence and continuous use in any of the Contracting States of the mark on which opposition is based upon goods at the same class, the opposer may claim for himself the preferential right to use such mark in the country where the opposition is made or priority to register or deposit in such country, upon compliance with the requirements established by the domestic legislation in such country and by this Convention.

Thus, the issue before us is whether applicant is entitled to assert priority under Article 7 in this forum. We will now review the parties' respective arguments.

Applicant argues that it is entitled to assert such an affirmative defense under Article 7 since the Board followed

Opposition No. 91159871

in *British-American Tobacco* the Supreme Court's precedent in *Bacardi* that the Pan American Convention is self-executing. Applicant also relies on *British-American Tobacco* to argue that the Board has the requisite jurisdiction to entertain applicant's affirmative defense, contending that insofar as the Lanham Act authorizes the Board to determine the registerability of marks in both *ex parte* and *inter partes* proceedings, and that Article 7 (as with Article 8) pertains to the registerability of marks, the Board may consider applicant's defense.

In his responsive brief, opposer acknowledges that the Board has previously determined that the Pan American Convention is self-executing.  Opposer maintains, however, that Congress incorporated rights under Article 7 of the Pan American Convention pursuant to the provisions set forth in Section 44 of the Lanham Act, and that therefore applicant is precluded from asserting priority under Article 7.[8]  In support of his argument, opposer relies on the last clause found in Article 7, arguing that this language implicitly refers to the rights and remedies created for foreign

---

[8] Section 44 of the Lanham Act, 15 U.S.C. § 1126 (1982), permits qualified foreign applicants who own a registered mark in their country of origin to obtain a U.S. trademark registration without alleging actual use in U.S. commerce.  If a U.S. application is filed within six months of the filing of the foreign application, such U.S. application will be accorded the same force and effect as if filed in the United States on the same date on which the application was first filed in the foreign country.

Opposition No. 91159871

trademark owners under Section 44, thereby acting as a bar
to the assertion of any rights found in Article 7 separate
and apart from the Lanham Act.  Opposer further cites a
decision from the Court of Appeals for the Second Circuit,
*Havana Club Holding, S.A. v. Galleon, S.A.*, 203 F.3d 116
(2d. Cir. 2000) ("*Havana Club*"), as well as a subsequent
district court opinion from the Southern District of New
York, *Empresa Cubana Del Tobaco v. Culbro Corporation*
("*Empresa*"), 213 F. Supp.2d 247 (S.D.N.Y. 2002), for the
proposition that a foreign trademark owner cannot simply
obtain priority in the United States by registering its mark
abroad in a contracting party state, but must instead comply
with the provisions set forth in Section 44 of the Lanham
Act.  Lastly, opposer maintains that applicant has
implicitly conceded the exclusive applicability of Section
44 to this case by virtue of filing its application under
Section 44(e).

In reply, applicant argues that neither *Havana Club* nor
*Empress*a override the Board's holding in *British-American
Tobacco* because neither decision identified specific
language in the Lanham Act or its legislative history
indicating that Section 44 was intended to limit the
assertion of rights embodied in Article 7 of the Pan
American Convention.  Applicant also argues that *Havana Club
Holding* and *Empres*a are inapplicable here because both cases

10

Opposition No. 91159871

involve the U.S. embargo against Cuba as implemented by the Cuban Assets Control Regulations.[9]

In construing a treaty, the terms thereof are given their ordinary meaning in the context of the treaty and are interpreted, in accordance with that meaning, in the way that best fulfills the purposes of the treaty. *See United States v. Stuart,* 489 U.S. 353, 365-66 (1989) (interpreting a treaty to carry out the intent or expectations of the signatories); *Kolovrat v. Oregon,* 366 U.S. 187, 193-94, (1961) (a treaty should be interpreted to carry out its purpose). The judicial obligation is to satisfy the intention of the signatory parties, in construing the terms of a treaty. *Valentine v. United States,* 299 U.S. 5, 11 (1936) ("it is our duty to interpret [the treaty] according to its terms. These must be fairly construed, but we cannot add or detract from them.") As discussed in *Sumitomo Shoji America, Inc. v. Agagliano,* 457 U.S. 176, 185 (1982), a court's role is "limited to giving effect to the intent of the Treaty parties." *See generally*

---

[9] 31 C.F.R. §§ 515.101-515.901 (1999), promulgated pursuant to section 5(b) of the Trading with the Enemy Act of 1917, as amended, 12 U.S.C. § 95a ("TWEA"). In 1996, Congress enacted the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act ("LIBERTAD Act"), Pub.L. No. 104-114, 110 Stat. 785 (1996), which, among other things, codified the regulations implementing the Cuban embargo, *see* 22 U.S.C. § 6032(h). The Secretary of the Treasury has the authority to administer the Cuban embargo, which he has delegated to the Office of Foreign Assets Control ("OFAC"), *see* 31 C.F.R. § 515.802.

11

Opposition No. 91159871

Restatement (Third) of Foreign Relations Law of the United States, Part III, Introductory Note at 144-145 (1987).

In accordance with these principles, our starting point is to discern the intent of the Pan American Convention. As stated by the Supreme Court in *Bacardi,* and as reiterated by the Board in *British-American Tobacco*:

> Here, the clear purpose of the [Pan American Convention] is to protect the foreign trademarks which fall within the treaty's purview. ... The intent of the treaty is to confer a substantive right to the protection of the foreign mark ...

The Preamble to the Convention reflects this objective:

> Animated by the desire to reconcile the different juridical systems which prevail in the several American Republics; and
> Convinced of the necessity of undertaking this work in its broadest scope, with due regard for the respective national legislations;
> Have resolved to negotiate the present Convention for the protection of trade marks, trade names and for the repression of unfair competition and false indications of geographical origin, and for this purpose have appointed as their respective delegates, . . .

Article 1 of the Convention further illuminates the contracting states' intent by adopting the principle of national treatment:

> The Contracting States bind themselves to grant to the nationals of the other Contracting States and to domiciled foreigners who own a manufacturing or commercial establishment or an agricultural development in any of the States which have ratified or adhered to the present Convention the same rights and remedies which their laws extend to their own nationals or domiciled persons with respect to trade marks, trade names, and the

12

Opposition No. 91159871

> repression of unfair competition and false
> indications of geographical origin or source.

Thus, the above provisions evidence the signatories' intent to create a uniform system for the protection of foreign trademarks.

Our next step is to analyze the text of Article 7. According to its plain meaning, an owner of a mark protected in a contracting state has the right to challenge the use and registration of an interfering mark in another contracting state, upon proof that the interfering party had knowledge of the existence and continuous use of the mark and upon compliance with the domestic requirements in that contracting state. The aggrieved owner may assert the preferential right to use and register the mark in the country where the claim is being asserted. Thus, the text of Article 7, when read in conjunction with the stated purpose of the treaty, clearly confers to eligible trademark owners a "preferential" or prior right where the requirements of the article have been satisfied.

Although not explicitly stated as such, in his responsive brief opposer implicitly takes the position that Section 44 of the Lanham Act abrogates the rights created under Article 7 of the Pan American Convention. We disagree. A "treaty will not be deemed to have been abrogated or modified by a later statute unless such purpose

Opposition No. 91159871

on the part of Congress has been clearly expressed." *Cook v. United States,* 288 U.S. 102, 120 (1933) (emphasis added); *see Trans World Airlines, Inc. v. Franklin Mint Corp.,* 466 U.S. 243, 252 (1984). Nothing in the statutory language found in either Section 44 of the Lanham Act nor the legislative history of the Lanham Act evince a clear expression by Congress to override the rights set forth in Article 7 of the Pan American Convention.

Furthermore, opposer's interpretation of the last clause of Article 7 strains the plain meaning of the text. The clause merely establishes as a prerequisite to assertion of a claim or defense under Article 7 compliance with the domestic legislation in the country where the actionable conduct takes place. In the case of an application based on a foreign registration in the United States (as is the case here), that requirement means the filing of an application pursuant to either Section 44(d) or (e). Opposer's proffered interpretation would otherwise defeat the purpose of the Convention which is to provide a uniform standard for the assertion of foreign trademark rights among the signatories.

Lastly, we find opposer's arguments regarding the import of *Havana Club Holdings* and *Empresa* unconvincing. We see no reason to apply the logic from *Havana Club Holdings* and *Empresa* since those cases pertain to rights derived from

14

Opposition No. 91159871

the Pan-American Convention within the context of statutory
provisions and regulations implementing the U.S. embargo
against Cuba.

This brings us to the question of whether the Board has
the requisite subject matter jurisdiction to entertain
applicant's assertion of priority under Article 7 of the
Convention.  We hold that the Board does have the authority
to consider applicant's affirmative defense.  The relevant
language of Article 7 provides that "[a]ny owner of a mark
protected in one of the contracting states in accordance
with its domestic law, . . . shall have the right to oppose
such *use, registration* or deposit and shall have the right
to employ all legal means, procedure or recourse provided in
the country in which such interfering mark *is being* used or
where its registration or deposit is being sought . . . "
(emphasis added).  In this instance, opposer's claim of
priority is not predicated upon ownership of a federal
registration but rather upon use in the United States.
Thus, applicant, in asserting priority over opposer, is
challenging opposer's purported prior rights derived from
common law use of his mark.  The text of Article 7
specifically gives the foreign owner of a mark the right to
challenge priority rights based on use.  Clearly the Board
has the authority to determine prior rights arising from
common law usage within the context of adjudicating Section

15

Opposition No. 91159871

2(d) claims.  It logically follows that the Board has the subject matter jurisdiction to entertain applicant's affirmative defense of priority under Article 7 of the Pan American Convention.

V.    *Is Applicant Entitled to Summary Judgment Under Article 7?*

Having now established that applicant has properly asserted Article 7 of the Pan Amercan Convention as an affirmative defense to opposer's claim of priority under Section 2(d) in this forum, we shall now examine the evidence presented before us to determine whether summary judgment in applicant's favor is warranted.  First, we shall review the arguments proffered by both parties.

In its motion for summary judgment, applicant contends that it is the owner of well-known restaurants in Peru operating under the mark PARDO'S CHICKEN; that it owns trademark registrations for the PARDO'S CHICKEN mark for restaurant and related goods and services in Peru; that opposer was aware of applicant's PARDO'S CHICKEN restaurant in Peru prior to adopting and using his PARDO'S CHICKEN mark in the United States; and that therefore, pursuant to Article 7, applicant has priority over opposer in the United States.

Applicant has submitted the following evidence in support of its motion for summary judgment: (1) the affidavit of Mr. Arnold H. Wu, Director and General Manager

16

Opposition No. 91159871

of applicant; (2) the declaration of Ms. Jean Patterson, the vendor who obtained a copy of the file history of opposer's application for the mark PARDO'S CHICKEN with the application attached thereto; and (3) copies of applicant's first set of interrogatories and first set of requests for admissions, and opposer's responses thereto. Applicant has also submitted copies of the following Peruvian trademark registrations, with translations, owned by applicant which Mr. Wu has attested to as valid and subsisting:

Registration No. 0032113, issued on April 16, 2003, for the mark PARDO'S CHICKEN in the colors red and green for the entire class heading covering commercial business management, commercial administration, office work, advertising, franchise demonstration and direction and commercial administration related to franchises in International Class 35;

Registration No. 0019995, issued on January 14, 2000, for the mark PARDO'S CHICKEN and design, for distribution, transportation, packing and warehousing of food and beverages, organization of travel and other services in International Class 39;

Registration No. 00084467, issued on October 29, 2002, for the mark PARDO'S CHICKEN in stylized form, for the entire class heading covering coffee, tea, cocoa, sugar, rice, tapioca, sago, artificial coffee, flour and preparations made from cereals, bread, pastry and confectionery, ices, honey, treacle, yeast, baking-powder, salt, mustard, vinegar, sauces (condiments), spices, and ice in International Class 30;

Registration No. 00084466, issued on October 29, 2002, for the mark PARDO'S CHICKEN in stylized form for the entire class heading covering meat, fish, poultry and game; meat extracts; preserved, dried and cooked fruit and vegetables, jellies, jams, compotes, eggs, milk and milk products, edible oils and fats International Class 29;

17

Opposition No. 91159871

> Registration No. 00084191, issued on October 23, 2002, for the mark PARDO'S CHICKEN in stylized form for the entire class heading covering agricultural, horticultural and forestry products and grains not included in other classes, live animals, fresh fruits and vegetables, natural plants and flowers, foodstuffs for animals, and malt in International Class 31; and

> Registration No. 00019994, issued on January 14, 2000, for the mark PARDO'S CHICKEN and design for the entire class heading covering catering services, temporary accommodations, medical, sanitary and beauty care services, veterinary and agricultural services, legal services, scientific and industrial research, and computer programming services in International Class 42.

In his responsive brief, opposer contends that applicant has failed to satisfy the statutory requirements set forth in Section 44, arguing that a genuine issue of material fact remains regarding applicant's bona fide intent to use its applied-for mark in U.S. commerce. Opposer further maintains that applicant cannot establish its priority vis-à-vis opposer because a genuine issue of material fact exists regarding whether opposer had knowledge of the existence and continuous use of the PARDO'S CHICKEN mark in Peru. In support of his position, opposer has submitted excerpts of the discovery deposition transcript of Mr. Wu.

In reply, applicant contends that opposer has failed to counter applicant's motion with any facts concerning opposer's knowledge of the PARDO'S CHICKEN mark in Peru. Applicant also maintains that opposer has selectively cited the deposition transcript of Mr. Wu without considering

18

Opposition No. 91159871

statements regarding applicant's bona fide intent to use the PARDO'S CHICKEN mark in commerce in the United States. Applicant has submitted the complete deposition transcript of Mr. Wu as well as a second affidavit executed by Mr. Wu.

Summary judgment is an appropriate method of disposing of cases in which there are no genuine issues of material fact in dispute, thus leaving the case to be resolved as a matter of law. *See* Fed. R. Civ. P. 56(c). A party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact, and that it is entitled to summary judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it would have the burden of proof at trial, judgment as a matter of law may be entered in favor of the moving party. *See* Fed. R. Civ. P. 56(c); *Celotex Corp., supra*, 477 U.S. 322-23. The nonmoving party must be given the benefit of all reasonable doubt as to whether genuine issues of material fact exist, and the evidentiary record on summary judgment, and all inferences to be drawn from the undisputed facts, must be viewed in the light most favorable to the nonmoving party. *See Opryland USA, Inc. v. Great American Music Show, Inc.,* 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992). When the moving party's motion is supported by

19

Opposition No. 91159871

evidence sufficient to indicate that there is no genuine issue of material fact, and that the moving party is entitled to judgment, the burden shifts to the nonmoving party to demonstrate the existence of specific genuinely disputed facts that must be resolved at trial.  The nonmoving party may not rest on the mere allegations of its pleadings and assertions of counsel, but must designate specific portions of the record or produce additional evidence showing the existence of a genuine issue of material fact for trial.

Based on the submissions of the parties, we find that applicant has met its burden of demonstrating that there are no genuine issues of material fact, and that applicant is entitled to judgment as a matter of law.

In this particular case, in order to prevail on the issue of priority pursuant to Article 7 of the Pan American Convention, applicant must establish that there is no genuine dispute (1) that it is the owner of a PARDO'S CHICKEN mark protected in Peru; (2) that applicant may have known that opposer is using or applying to register an interfering mark in the United States; (3) that opposer had knowledge of the existence and continuous use in Peru of the PARDO'S CHICKEN mark in connection with services in the same class prior to his use of the PARDO'S CHICKEN mark in the United States; and (4) that applicant has complied with the

20

Opposition No. 91159871

requirements set forth in the domestic legislation in the
United States and the requirements of the Pan American
Convention -- that is, filing for protection of its mark
under Section 44 of the Lanham Act.

    A.   *Applicant's Ownership of a Foreign Protected Mark*

    As noted above, applicant has made of record copies of
valid and subsising Peruvian registrations for the mark
PARDO'S CHICKEN in both typed and stylized form for use in
connection with restaurants as well as various related goods
and services.  Accordingly, applicant's ownership of a mark
protected in a contracting state to the Pan American
Convention (in this case, Peru) is not at issue.

    B.   *That Applicant May Have Known of Opposer's Use of
        or Application to Register an Interfering Mark in
        the United States*

    The evidence of record clearly establishes that there
is no genuine issue of material fact that opposer has
applied to register an "interfering mark" in the United
States.  Applicant has submitted records of the USPTO
showing that on November 15, 2002, opposer filed an
application pursuant to Section 1(b) to register the mark
PARDO'S CHICKEN mark for "restaurant services" in
International Class 43.  Thus, there is no genuine issue
that, as identified in his application, opposer's services
are identical to the services delineated in applicant's
foreign registration.

Opposition No. 91159871

In addition, it is undisputed that the literal elements of the parties' respective marks are the same. Opposer's mark as originally filed is displayed below:



The stylization clearly is identical to applicant's registered mark in Peru. We therefore conclude that no genuine issue of material fact exists that opposer's mark clearly constitutes an "interfering mark" within the meaning of Article 7.

It is also undisputed that on November 18, 2002, three days after the filing of opposer's application, applicant sent a letter to opposer regarding opposer's PARDO'S CHICKEN mark. Under these circumstances, there is no genuine issue of material fact that applicant "may have known" of opposer's application and use of an "interfering mark" in the United States.

Opposition No. 91159871

     C.   *Opposer's Knowledge of the Existence and
          Continuous Use in Peru of the Mark in Connection
          with Services in the Same Class Prior to Opposer's
          Use in the United States*

We now turn to the issues of opposer's knowledge and

date of first use in the United States.  The following facts

are undisputed:

> That applicant, through its predecessor in interest,
> has offered restaurant services under the mark PARDO'S
> CHICKEN in Peru since 1986 and has made continuous use
> of the mark in Peru since that date (*See* Affidavit No.
> 1 of Mr. Arnold H. Wu, Paragraph 3 and Exhibit 1
> attached thereto consisting of an advertisement in Peru
> for applicant's restaurant services illustrating use of
> the mark consistent with the stylization in applicant's
> Section 44(e) application);

> That opposer is a Peruvian citizen who was born in Peru
> and lived in Peru prior to residing in the United
> States and has traveled to Peru in the last ten years
> (*See* opposer's response to Interrogatory No. 2 and
> opposer's response to Admission Request Nos. 11 and
> 13);

> That the address given by opposer for when he lived in
> Peru from 1968-1993 is less than twenty blocks from a
> Pardo's Chicken restaurant (*See* Affidavit of Mr. Arnold
> H. Wu submitted with applicant's reply brief, Paragraph
> 17);

> That for purposes of asserting priority in this case,
> opposer claims March 2002, the date of incorporation of
> Pardo's Chicken, Inc. in Florida (*See* opposer's
> response to Interrogatory No. 6 and opposer's response
> to Admission Request No. 27);

> That in July 2002, opposer, prior to opening his
> restaurant in Florida, erected a sign over the door
> with the wording PARDO'S CHICKEN in the same
> stylization and color as that used by applicant in Peru
> and Chile and in applicant's Section 44(e) application
> (*See* Affidavit No. 1 of Mr. Arnold H. Wu, Paragraph 10
> and Exhibits A and D attached thereto for a comparison
> of the signs);

Opposition No. 91159871

> That opposer commenced operations of his restaurant in
> July 2003 (*See* opposer's response to Interrogatory No.
> 7); and

> That, as noted above, one day after applicant filed the
> application which is the subject of this opposition,
> opposer filed Application Serial No. 76467713 to
> register the mark PARDO'S CHICKEN for restaurant
> services, using the same stylization of the mark as
> used by applicant in connection with applicant's
> restaurants in Peru.

For purposes of analyzing the issue of priority within the
context of opposer's Section 2(d) claim, while opposer
states that he intends to rely on his date of incorporation
as his date of first use in commerce, the earliest date upon
which opposer may rely for priority purposes in this case is
July 2002, the date opposer posted his sign displaying the
mark.

The crux of the parties disagreement regarding
opposer's purported knowledge of the existence and
continuous use of the PARDO'S CHICKEN mark in Peru lies in
the parties' divergent interpretations of opposer's
responses to applicant's discovery requests.  We find,
however, that based on opposer's discovery responses, no
genuine issue exists with regard to opposer's knowledge of
the existence and continuous use of the PARDO'S CHICKEN mark
in Peru prior to opposer's use in the United States for the
identical services.

The following discovery requests and responses are at
issue:

24

Opposition No. 91159871

### INTERROGATORY NO. 18

Describe when and by what means Opposer first became aware of Applicant's PARDO'S CHICKEN mark being used for restaurant services outside the United States, and the person or persons having most knowledge of these facts.

### Response:

Opposer learned of applicant's purported use of the mark outside of the United States by its letter dated November 18, 2002. To further answer this interrogatory, although opposer was aware of restaurants in Peru called Pardo's Chicken, he was not aware until said date of any relationship between those establishments and applicant.

### REQUEST NO. 9

Admit that Opposer had visited one of Applicant's PARDO'S CHICKEN restaurants outside of the United States prior to the date Opposer adopted the PARDO'S CHICKEN name or mark for his business in the United States.

### Response:

Denied insofar as opposer had no knowledge of applicant's relationship with the restaurant in Peru known as Pardo's Chicken.

Opposer responded to other discovery requests in a

similar manner:

### REQUEST NO. 6

Admit that Opposer was aware of Applicant's PARDO'S CHICKEN mark for restaurant services offered in Peru prior to the date Opposer first posted any signs for Opposer's PARDO's chicken restaurant in the United States.

25

Opposition No. 91159871

Response:

Denied.  Opposer had no knowledge of applicant's
relationship with the restaurant in Peru known as
Pardo's Chicken.


REQUEST NO. 10

Admit that Opposer had visited one of Applicant's
PARDO'S CHICKEN restaurants outside of the United
States prior to the date Opposer first posted any signs
for Opposer's PARDO'S CHICKEN restaurant in the United
States.


Response:

Denied insofar as Opposer had no knowledge of
Applicant's relationship with the restaurant in Peru
known as Pardo's Chicken.

Applicant contends that opposer's denials are based

only on the premise that opposer was unaware of applicant's

relationship with the PARDO'S CHICKEN restaurant in Peru and

not of the existence of the Pardo's Chicken restaurants in

Peru.  Applicant further maintains that Article 7 only

requires that the interfering party be aware of the

existence and continuous use of the mark in one of the

contracting states, and does not require knowledge of the

owner of the mark.  Opposer, however, maintains that the

discovery responses are "vague on this issue" because they

fail to establish a specific date for opposer's knowledge.

The Board rejects opposer's contention that the

discovery responses fall short of establishing the absence

of a genuine issue of material fact regarding opposer's

Opposition No. 91159871

knowledge.  In his discovery responses, while opposer does
state that he was unaware of the relationship between
applicant and the PARDO'S CHICKEN mark used in connection
with restaurants in Peru, these statements do not undermine
the unequivocal statements that opposer was aware of the
existence and continuous use of the PARDO'S CHICKEN
restaurants in Peru.  Indeed, according to the text of
Article 7, applicant is not required to establish that
opposer knew that applicant was the owner of the PARDO'S
CHICKEN mark in Peru.  To the contrary, the terms of the
treaty only require that the offending party have "knowledge
of the continuous use and existence" of the mark.  Based on
the discovery responses, it is clear that opposer was aware
of the existence and use of the mark in Peru prior to his
use in the United States.  Thus, the discovery responses
applicant relies upon are sufficient to establish no genuine
issue remains as to this material fact.

　　　Furthermore, opposer has offered no evidence to
contradict the findings summarized above.  Instead, opposer
relies on semantic arguments regarding the interpretation of
his discovery responses which we have discounted as
unpersuasive.

　　　We therefore find that the evidence of record shows the
lack of genuine issue of material fact that opposer had
knowledge of the existence and continuous use of the PARDO'S

27

Opposition No. 91159871

CHICKEN mark in Peru prior to his use of the mark in the United States for the identical services.

D. *Applicant's Compliance with U.S domestic Legislation*

Applicant, by virtue of filing its application under Section 44(e) of the Lanham Act has complied with the requirements set forth in the domestic legislation in the United States.  Further, we find no genuine issue of material fact that applicant has satisfied the requirements set forth in Section 44(e), namely, that applicant has a bona fide intent to use its mark in commerce in the United States.  The two affidavits of Mr. Wu contain the following unequivocal statements regarding applicant's bona fide intent to use its mark in commerce:

9. For the past several years, since at least as early as May, 2000, [applicant] has undertaken exploratory efforts to expand into the United States, by taking such actions as making contact with suppliers of food products in United States and advertising its services in English on the web site accessible to U.S. patrons at www.pardoschicken.com.

(Affidavit No. 1).

5. [Applicant] has had a bona fide intent to use the mark PARDO'S CHICKEN for restaurant services in commerce in the United States since it at least as early as February 8, 1999, when it filed its initial United States application to register the mark PARDO'S CHICKEN.

6. [Applicant's] initial U.S. application to register PARDO'S CHICKEN was abandoned on January 20, 2001 for failure to respond to a pending office action.

7. [Applicant] has been investigating U.S. markets for the opening of a PARDO'S CHICKEN restaurant since at

28

Opposition No. 91159871

least as early as 2000 and has sponsored numerous
trips by its business executives for the purpose of
visiting with realtors, visiting potential restaurant
sites, visiting with restaurant equipment vendors and
food vendors and for obtaining quotations for such
products from vendors.

14.  [Applicant] has advertised its PARDO'S CHICKEN
restaurants in newspapers with a United States
distribution in at least the years 2003 and 2004.

16.  [Applicant] has formed a corporation in the United
States for the purpose of being able to operate
and/or manage U.S. restaurants under the PARDO'S
CHICKEN mark.  This corporation, First Florida
Chicken, Inc., was incorporated in Florida on
February 25, 2003.

(Affidavit No. 2)

The above statements made by Mr. Wu are corroborated in his

discovery deposition transcript, and the evidence submitted

by opposer is insufficient to raise a genuine issue of

material fact on this point.  We therefore find no genuine

issue of material fact that applicant has complied with the

requirements set forth in U.S. domestic legislation for

invoking priority under Article 7 of the Pan American

Convention.

Based on the foregoing, applicant has demonstrated that

there is no genuine issue of material fact regarding the

requisite elements to establish priority under Article 7 of

the Pan American Convention, and that it is entitled to

judgment as a matter of law.  In view of our decision in

applicant's favor on the issue of priority, opposer cannot

as a matter of law prevail on his claim of likelihood of

Opposition No. 91159871

confusion under Section 2(d).  *See Leatherwood Scopes International, Inc. v. Leatherwood,* 63 USPQ2d 1699 (TTAB 2002); *see also, Aktieselskabet af 21. November 2001 v. Fame Jeans Inc,* 77 USPQ2d 1861 (TTAB 2006).  Accordingly, applicant's motion for summary judgment is granted, and the notice of opposition is dismissed with prejudice.