# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **AKTIESELSKABET AF 21.** | ) | |
| **NOVEMBER 2001,** | ) | |
|  | ) | |
| **Plaintiff,** | ) | |
|  | ) | |
| **v.** | ) | **Civ. No. 06-585 (RCL)** |
|  | ) | |
| **FAME JEANS, INC.,** | ) | |
|  | ) | |
| **Defendant.** | ) | |

_____

## MEMORANDUM OPINION

This matter comes before the Court on the defendant's Motion to Dismiss [25] the plaintiff's Amended Complaint [20].  The Court has considered the defendant's motion, the plaintiff's opposition thereto, the defendant's reply, the plaintiff's surreply, and the applicable law.  For the reasons set forth below, the defendant's motion is hereby GRANTED.

## BACKGROUND

Since 1990, Bestseller A/S, a Danish clothing company, has used several variations of the "Jack and Jones" trademark outside the United States and has registered them in over thirty countries.  (Pl.'s Am. Compl. 1-7).  Plaintiff Aktieselskabet af 21. November 2001 ("Bestseller"), a wholly-owned Bestseller A/S affiliate, presently holds its rights and interests in these trademarks.  (Pl.'s Am. Compl. 1-2.)

On January 9, 2004, defendant Fame Jeans, Inc. ("Fame Jeans"), a Canadian clothing company, filed an intent-to-use application with the United States Patent and Trademark Office

("USPTO") under 15 U.S.C. § 1051(b) ("Section 1(b)") to register the "Jack and Jones" mark for use on certain clothing items[1] in the United States.  (Mem. Supp. Def's Renewed Mot. to Dismiss 2.)  On December 6, 2004, Bestseller applied under 15 U.S.C. § 1126(e) ("Section 44(e)") to register the "Jack and Jones" mark for use on a nearly-identical set of clothing items.  (Pl.'s Am. Compl. 10).  Bestseller also opposed Fame Jeans's application before the Trademark Trial and Appeal Board ("TTAB") pursuant to 15 U.S.C. § 1063(a), claiming the close resemblance between the mark for which Fame Jeans had applied and its own previously used and applied-for mark would likely cause confusion in the marketplace.[2]  *Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*, 77 U.S.P.Q.2d 1861, 1863 (T.T.A.B. 2006).  Because the parties agreed they sought to register identical marks for use on identical or highly similar products, their dispute centered on who could claim superior rights to register the mark for use in the United States.  *Id.* at 1862-63.

On January 30, 2006, the TTAB issued a Decision that granted Fame Jeans's motion for summary judgment, denied Bestseller's cross-motion, and dismissed Bestseller's Opposition with prejudice.  *Id.* at 1863, 1864.  Specifically, the TTAB found no genuine issue as to priority of use between the parties because Bestseller did not claim it had used the mark in the United States, and under 15 U.S.C. § 1057(c) ("Section 7(c)"), Fame Jeans could rely on its earlier application date as a constructive use date.  *Id.* at 1864.  According to the TTAB, Bestseller's use of the mark abroad was irrelevant to trademark right priority, which depends only on priority of

---

[1] For a complete list, see *Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*, 77 U.S.P.Q.2d 1861, 1862 (T.T.A.B. 2006).

[2] Opposition No. 91163436.

use in the United States.  *Id.* (citing 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 29.02 (4th ed. 2005)).  Finally, the TTAB noted that Bestseller did not claim that its mark was "famous" under the Paris Convention.  *Id.*  Because Bestseller could not, as a matter of law, establish priority, the TTAB dismissed its Opposition with prejudice.  *Id.*

On March 30, 2006, Bestseller filed a complaint [1] in this Court pursuant to 15 U.S.C. § 1071(b)(1) seeking, *inter alia*, vacation of the TTAB's January 30, 2006 Decision, denial of Fame Jeans's registration application, and judgment that Bestseller is entitled to register the "Jack and Jones" mark.  (Pl.'s Compl. 5.)  On July 13, 2006, Fame Jeans filed a motion [9] and accompanying memorandum of law seeking dismissal of Bestseller's complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Bestseller subsequently filed an opposition [16], and Fame Jeans replied [18].

On August 30, 2006, Bestseller moved to amend its complaint [19] and filed both a memorandum of law accompanying the motion [20] and an amended complaint [20].  Fame Jeans then renewed its motion to dismiss [25] and submitted a supporting memorandum of law [25].  On October 10, 2006, the Court granted Bestseller leave to amend [26],  dismissed Fame Jeans's original motion as moot, and ordered Fame Jeans's renewed motion deemed timely filed. Bestseller renewed its opposition [28] on October 13, 2006, and Fame Jeans replied [30] on November 2.  Finally, on March 27, 2007, Bestseller sought permission to file a surreply [32] and filed both a surreply [32] and accompanying memorandum of law [32].

## DISCUSSION

### I. Legal Standard under Rule 12(b)(6).

Defendant has moved to dismiss plaintiff's amended complaint pursuant to Federal Rule

of Civil Procedure 12(b)(6).  (Def.'s Renewed Mot. to Dismiss 1.)  Hence, the Court must determine whether the challenged complaint adequately states a claim on which relief may be granted.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  As a general matter, the Federal Rules require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. Pro. 8(a)(2)).  Further, in measuring a complaint against this standard, the court must construe all allegations therein and draw all reasonable inferences in the complainant's favor.  *Scheuer*, 416 U.S. at 23; *U.S. ex rel. Harris v. Bernad*, 275 F. Supp. 1, 5 (D.D.C. 2003).  Indeed, until quite recently, courts adhered to the rule that "a complaint should not be dismissed for failure to state a claim unless it appears *beyond doubt* that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief."  *Conley*, 355 U.S. at 45-46 (emphasis added).

This term, however, in an antitrust case brought under the Sherman Act, the U.S. Supreme Court readdressed pleading requirements under the Federal Rules.  *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level."  *Id.* at 1964-65.  As the Court observed, Federal Rule of Civil Procedure 8(a)(2) requires a "showing" that the pleader is entitled to relief, a substantive threshold not achieved by conclusory assertions.  *Id.* at 1965 n. 3.  Though such assertions may provide a defendant with the requisite "fair notice" of the nature of a plaintiff's claim, only factual allegations can clarify the "grounds" on which that claim rests.  *Id.*  Though the *Twombly*

4

plaintiffs' complaint included factual details of the defendants' independent non-competitive conduct, it failed to allege any facts compelling the inference that this conduct arose from an agreement among the defendants not to compete. *Id.* at 1965. The Court ultimately affirmed the district court's dismissal of the complaint, holding that plaintiffs had "not nudged their claims across the line from conceivable to plausible." *Id.* at 1974.

Although the plaintiffs agreed, in theory, with the need for plausibility, they argued their complaint satisfied *Conley*'s "no set of facts" standard. *Id.* at 1968. Because conspiracy was one possible explanation for the defendants' parallel conduct, the plaintiffs were owed an opportunity to discover and prove a supportive "'set of facts . . . which would entitle [them] to relief.'" *Id.* But the Court declared this reading of *Conley* was too literal. *Id.* Indeed, such a rule would permit "a wholly conclusory statement of claim [to] survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id.* (alteration in original). Rather, *Conley*'s phrasing was but "an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969.

## II. Analysis under Rule 12(b)(6).

In Count I of its amended complaint, Bestseller seeks reversal of the TTAB's decision dismissing its Opposition, asserting that 1) Bestseller's later-in-time application under Section 44(e) takes priority over Fame Jeans's application under Section 1(b); 2) "Bestseller has superior equitable claims to register 'Jack & Jones' in the United States based on its longstanding and

widespread use of the mark, in contrast with Fame Jeans, which has never used the mark anywhere;" and 3) Bestseller intends to submit new evidence not presented to the TTAB.  (Pl.'s Am. Compl. 13.)  In Count II, Bestseller contends Fame Jeans's application was void *ab initio* because Fame Jeans lacked a bona fide intention to use the mark when it applied for registration. (Pl.'s Am. Compl. 14.)  In Count III, Bestseller asserts a claim for misrepresentation based on Fame Jeans's alleged false statements in its application to the USPTO.  (Pl.'s Am. Compl. 14-15.)

The Court must now test whether Bestseller has adequately pled any or all of these claims.

**A. Count I: Request for Reversal Under Section 21 of Lanham Act**

When a "party to an opposition proceeding . . . is dissatisfied with the [TTAB's] decision," the Lanham Act permits that party to appeal to the United States Court of Appeals for the Federal Circuit or to bring a civil action in federal district court.  15 U.S.C. § 1071(a), (b) (2007).   In the latter case, the district court acts as an appellate court to the TTAB and applies a hybrid standard of review, affording deferential treatment to the TTAB's factual findings but confronting legal questions *de novo*.  *Mitchell Cosmetics SARL v. Pramil S.R.L. (Esapharma)*, No. 04-1557, 2005 WL 2373371, at *2 (D.D.C. Aug. 29, 2005) (citing *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F.3d 983, 989-90 (D.C. Cir. 1998)).  Though the district court may consider new evidence, it may not entertain claims or legal theories not presented to the TTAB. *Gold Seal Co. v. Weeks*, 129 F. Supp. 928, 937 (D.D.C. 1955) (citing *Lucke v. Coe*, 69 F.2d 372 (D.C. Cir. 1934); *Cherry-Burrell Corp. v. Coe*, 143 F.2d 372 (D.C. Cir. 1944)).  When, as here,

an adverse party resides in a foreign country, jurisdiction lies with the United States District Court for the District of Columbia.  15 U.S.C. § 1071(b)(4).  Thus, this Court's jurisdiction is proper as to those legal theories Bestseller argued before the TTAB.

Bestseller's complaint alludes to three alternative bases for reversal of the TTAB's adverse priority finding:  1) as a matter of law, absent actual use in the United States by either applicant, a Section 44(e) application takes priority over a previously filed Section 1(b) application; 2) when Fame Jeans applied, Bestseller had already acquired superior common law rights in the "Jack & Jones" mark through use in commerce in the United States; and/or 3) Bestseller's use of the "Jack & Jones" mark abroad had rendered that mark "famous" before Fame Jeans filed its application.  (*See* Pl.'s Am. Compl. 2-15.)  The complaint also pleads "superior equitable claims" and "new evidence" as grounds for review.  (Pl.'s Am. Compl. 13.) The Court will examine each theory in turn.

## 1. Priority

### a. Priority as a Matter of Law under Section 44(e)

Bestseller's complaint asserts:  Fame Jeans applied under Section 1(b) to register the "Jack & Jones" mark on January 9, 2004, (Pl.'s Compl. 10); Bestseller applied under Section 44(e) to register the "Jack & Jones" mark on December 6, 2004, (*id.*); and "[b]ased on its application under Section 44(e), Bestseller has priority to the Jack & Jones mark over Fame Jeans's application, which was filed under Section 1(b)," (*id.* at 13).  These allegations state a basis on which this Court can vacate the TTAB's decision only if, as a matter of law, a Section 44(e) applicant may gain priority over an earlier-in-time Section 1(b) applicant.

"Use in commerce" has long been the *sine qua non* of trademark rights.  *See*, *e.g.*, 15 U.S.C. § 1051 (2007) (permitting trademark registration on the principal register based on "use[] in commerce" or "a bona fide intention  . . . to use in commerce"); *Trade-Mark Cases*, 100 U.S. 82, 94 (1879) ("At common law, the exclusive right to [a trademark] grows out of its use, and not its mere adoption."); *In re Application of Gorham Mfg. Co.*, 41 App. D.C. 263, 265 (D.C. Cir. 1913) ("[t]rademarks were recognized by the common law and are acquired by use").  Here, however, both plaintiff and defendant applied to register the "Jack & Jones" mark under statutory exceptions to this general rule.  (Pl.'s Compl. 10.)

As amended in 1988, Lanham Act Section 1 offers U.S. applicants two options for trademark registration.  15 U.S.C. § 1051 (2007).  Section 1(a) provides for registration when the applicant submits a verified statement specifying that "the mark is in use in commerce" and that "no other person has the right to use such mark[, or one so similar as to cause confusion in the marketplace,] in commerce."  *Id.* § 1051(a).  Section 1(b), however, provides that "[a] person who has *a bona fide intention . . . to use* a trademark in commerce may request registration of its trademark."  *Id.* § 1051(b)(1) (emphasis added).  In this latter case, the USPTO will publish the application for opposition, and unless an opponent succeeds, will issue a notice of allowance to the applicant.  *Id.* § 1063.  Absent an approved extension, the applicant must then file "a verified statement that the mark is in use in commerce" within six months to obtain final registration.  *Id.* § 1051(d).

Though Section 1(b) thus ostensibly dispenses with the common law use requirement for initial registration, Section 7(c) further provides that the filing of an intent-to-use application "shall constitute constructive use of the mark," contingent on the applicant's subsequent

8

completion of the process described.  *Id.* § 1057(c).  Such constructive use confers "a right of priority [in that mark], nationwide in effect," except as against a person who has previously "used the mark," previously filed a still-pending or approved application to use the mark, or subsequently filed a still-pending or approved application that meets the requirements of 15 U.S.C. § 1126(d) ("Section 44(d)").  *Id.*  Thus, so long as a Section 1(b) applicant later actually uses the mark in commerce and is awarded registration, that applicant may rely on his application filing date for priority purposes.

Before final registration, the applicant may also rely on that priority date in proceedings before the TTAB.  *See, e.g., Larami Corp. v. Talk To Me Programs, Inc.*, 36 U.S.P.Q.2d (BNA) 1840 (1995) ("the right of an intent-to-use applicant to rely upon its constructive use date in Board proceedings comes into existence with the filing of its intent-to-use application, and [] the [] applicant can rely upon this date in an opposition for purposes of establishing priority").  Federal courts have generally permitted an intent-to-use applicant to assert his constructive use date to defend an action.[3]  Therefore, because defendant filed its Section 1(b) application on January 9, 2004, the Court finds this is the earliest priority date on which Fame Jeans may rely.

---

[3] *See, e.g., Warnervision Entertainment, Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir. 1996) (intent-to-use applicant could assert its constructive use date to defend an infringement action); *Mitchell Cosmetics SARL v. Pramil S.R.L. (Espharma)*, No. 04-1557, 2005 U.S. Dist. LEXIS 18915 (D.D.C. Aug. 29, 2005) (Lamberth, J.) (affirming priority determination by TTAB that relied on constructive use); *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 986 F. Supp. 253, 258 (D. Del. 1997) (defendant could rely on its intent-to-use application date for priority in defending an action).  *Cf. SCM Corp. v. Langis Foods, Ltd.*, 539 F.2d 196, (D.C. Cir. 1976) (recognizing Section 44(d) applicant's constructive use date based on foreign filing); *Larami Corp. v. Talk To Me Programs, Inc.*, 804 F. Supp. 555, 559-60 (S.D.N.Y. 1992) (declining to recognize intent-to-use applicant's constructive use date prior to full registration in infringement action brought by the applicant).

Like Section 1(b), Section 44(e) permits application absent prior use of that mark in U.S. commerce. 15 U.S.C § 1126(e) (2007). This provision allows "persons whose country of origin is party to any convention or treaty relating to trademarks . . . to which the United States is also a party, or extends reciprocal rights to nationals of the United States by law," to register otherwise eligible marks on the principle register based on a pre-existing foreign registration. *Id.* § 1126(b), (e). Such an applicant must assert a bona fide intention to use the mark in commerce and must submit a certified copy of the mark's registration in the applicant's country of origin. *Id.* § 1126(e).

Under Section 44(d), for priority purposes, such an applicant is accorded constructive use of the mark in the United States as of its foreign application date under certain conditions. *Id.* § 1126(d). First and foremost, the applicant's U.S. application must have been "filed within six months from the date on which the application was first filed in the foreign country." *Id.* Conversely, where more than six months have elapsed between the Section 44(e) applicant's foreign application date and its U.S. application date, that applicant may not rely on the foreign date for priority purposes. *See id.*

Plaintiff contends it may rely on its 1990 Danish registration as its priority date, citing a 1983 Florida district court decision as authority for this assertion. (Pl.'s Renewed Opp'n 3 (citing *Davidoff Extension S.A. v. Davidoff Int'l, Inc.*, No. 83-1435-Civ, 1983 U.S. Dist. LEXIS 12139 (S.D. Fla. 1983)).) In *Davidoff*, a Swiss corporation sought to enjoin a U.S. company from infringing on its U.S.-registered trademark. 1983 U.S. Dist. LEXIS 12139, at *1-3. The plaintiff was "a well-known international marketer of tobacco products and ha[d] registered its trademark 'Davidoff' with the [USPTO]." *Id.* at *2. The defendants alleged the plaintiff had not

used its mark in the United States and that its registration was thus fraudulent. *Id.* at *7. Still, the court found that the evidence contradicted this argument. *Id.* at *7-8. The court further observed that because the plaintiff had registered its mark in the United States under Section 44(e), based on its prior Swiss registration, the defendant's argument was "inconsequential." *Id.* at *8-10.

Bestseller appears to read this language to indicate that Section 44(e) affords a foreign applicant the blanket right to register a mark in the United States, regardless of prior application or use by another party, based solely on his foreign registration. (*See* Pl.'s Opp'n 3.)  This Court rejects that reading for three reasons. First, the statutory language in Section 44(d) is explicit: foreign registration confers priority in the United States when the registrant files an application with the USPTO *within six months* of his foreign application date - not eternally thereafter. *See* 15 U.S.C. § 1126(d) (2007).

Second, in *Davidoff*, the plaintiff's U.S. registration *predated the defendant's use of the mark*. *See* 1983 U.S. LEXIS 12139, at *1-4. Because it was "inconsequential" under Section 44(e) whether the plaintiff had actually used the mark, the plaintiff could claim constructive use as of its U.S. registration date. *See id.* at *2, *9-10; 15 U.S.C. § 1057(c) (2007). Under the "first in time, first in right" principle underpinning U.S. trademark law, *see* 2 J. Thomas McCarthy, *McCarthy on Trademarks* § 16:11 (4th ed. 2002), it could thus claim priority of use as against the defendant.   Here, because Bestseller filed its Section 44(e) application *after* Fame Jeans's constructive use date, (Pl.'s Compl. 10 ), its reliance on *Davidoff* is futile.

Third, Bestseller's proposed interpretation of Section 44(e) is both ill-defined and

illogical.  Plaintiff suggests a foreign trademark holder can automatically obtain U.S. registration based on its foreign registration date, regardless of any intervening U.S. applications or registrations.  (*See* Pl.'s Opp'n .)  But such a rule would completely ignore the territorial nature of trademark law.  *See* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 29:2, at 29-6 (4th ed. 2002).  A mark's registration in any qualifying country would effectively and indefinitely preempt U.S. registration of that mark by anyone other than the foreign registrant.  Another company that had successfully registered a mark and used it in U.S. commerce for decades could find its rights in that mark abrogated by a Section 44(e) application premised on an earlier foreign registration.  Nothing in the language of Section 44(e) suggests Congress intended this result, and indeed, the limiting provisions of Section 44(d) reveal a contrary intention.  *See* 15 U.S.C. § 44(d), (e) (2007).

The United States Court of Appeals for the Federal Circuit addressed a related question in *In re Rath*.  *See* 402 F.3d 1207 (Fed. Cir. 2005).  There, the court found that Section 44(e) applicants may obtain registration absent use in the United States but must comply with the Lanham Act's other provisions.  *Id.* at 1212.  The court observed:  "There is simply no way to read this [Act's legislative] history as suggesting that Congress intended to require registration on the principal register despite United States eligibility requirements.  If anything, the history confirms that the principal register was available to foreign registrants and United States citizens on equal terms . . . ."  *Id.*

Similarly, this Court finds that Section 44(e) does not permit foreign registrants to circumvent statutory and common law priority rules.  In Section 44(d), Congress specified conditions under which a foreign applicant may rely on a previously filed foreign application for

12

priority.  *See* 15 U.S.C. § 1126(d) (2007).  Where, as here, a Section 44(e) applicant does not

meet those conditions, Congress has not provided for such reliance, and this Court will not read

silence as approval.  Accordingly, the Court finds that as a matter of law, Bestseller's Section

44(e) application does not automatically have priority over Fame Jeans's Section 1(b)

application. Therefore, the Court will not reverse the TTAB's decision on this basis, and

plaintiff's claim on this ground must fail.

**b. Priority Based on Use in Commerce**

Bestseller's complaint also alleges that:  Bestseller has used the "Jack & Jones" mark

since 1990, (Pl.'s Am. Compl. 2.); Bestseller has sold "[t]ens of millions of articles of clothing"

bearing the "Jack & Jones" mark "worldwide," including in the European Union, the Middle

East, Russia, and China, (*id.* at 8.); Bestseller "owns twenty-one domain names containing the

Jack & Jones trademarks" and operates at least one website that "has been available in English

since 1997," (*id.*); Bestseller "has spent millions of dollars" to advertise, promote, register, and

protect the "Jack & Jones" mark "worldwide," (*id.* at 9.); and U.S. consumers can purchase

Bestseller's products bearing the "Jack & Jones" mark "through Bestseller's foreign customers

and stores as well as through re-sales on eBay.com," (*id.*).

As previously discussed, Section 7(c) limits Fame Jeans's ability to rely on its January 9,

2004 application date for priority  *See supra* part II(B); 15 U.S.C. § 1057(c) (2007).  Specifically,

Section 7(c) does not confer a right of priority on an intent-to-use applicant against "a person

whose mark has not been abandoned and who, prior to such filing . . . has used the mark."  *Id.*

Further, 15 U.S.C. § 1052(d) ("Section 2(d)") provides that no mark shall be registered that "so

resembles . . . a mark or trade name previously used in the United States by another and not abandoned, as to be likely" to cause confusion in the marketplace. *Id.* at 1052(d). In interpreting the Lanham Act, the Federal Circuit has generally defined the phrase "used in commerce" to mean the "sale or transportation of goods bearing the mark in or having an effect on: (1) United States interstate commerce; (2) United States commerce with foreign nations; or (3) United States commerce with the Indian Tribes." *Person's Co. Ltd. v. Christman*, 900 F.2d 1565, 1568 (Fed. Cir. 1990).[4] Under Section 2(d), however, "use in the United States" carries a broader definition, including "'use that is strictly intrastate and not regulable by Congress.'" *First Niagara Ins. Brokers, Inc. v. First Niagara Fin. Group, Inc.*, No. 06-1202, 2007 U.S. App. LEXIS 555, at *9 (Fed. Cir. Jan. 9, 2007). Hence, if Bestseller has used the "Jack & Jones" mark in the United States under this definition, and such use predates Fame Jeans's January 9, 2004 application, Fame Jeans may not assert priority.

The Court may not reach this question, however. Bestseller is not entitled to assert this claim before the district court because it did not do so before the TTAB. *See Mitchell Cosmetics SARL v. Pramil S.R.L. (Esapharma)*, No. 04-1557, 2005 WL 2373371, at *6 (D.D.C. Aug. 29, 2005) (Lamberth, J.). In *Mitchell*, the plaintiff had applied to register the "Regge Lemon" mark and sought review of the TTAB's decision granting the defendant's opposition thereto. *Id.* at *2-3. The TTAB found the defendant had used the mark in the United States prior to the plaintiff's Section 1(b) application date and thus "had a priority of use." *Id.* at *3. When the plaintiff

_____

[4] *See also Russian Acad. of Sciences v. Am. Geophysical Union*, No. 98-2165, 1998 U.S. Dist. LEXIS 20598, at *17 (D.D.C. Dec. 17, 1998) ("[t]o acquire trademark rights, the trademark must be used in commerce in the relevant market").

disputed the TTAB's priority finding before the district court, it offered three additional bases on which the defendant's use of the mark should be held invalid to confer priority. *Id.* This Court declined to entertain these claims because the plaintiff had not raised them before the TTAB. *Id.* at *6-7. Courts within this district "are satisfied that Congress did not intend, by setting up review in this court, to transfer the functions of the Patent Office to the District Court . . . [and] will not pass upon those claims which have not first been considered on the merits by the Patent Office." *Gold Seal Co. v. Weeks*, 129 F. Supp. 928, 937 (D.D.C. 1955) (citing *Lucke v. Coe*, 69 F.2d 372 (D.C. Cir. 1934); *Cherry-Burrell Corp. v. Coe*, 143 F.2d 372 (D.C. Cir. 1944)).

Here, the TTAB's opinion clearly states: "[Bestseller] does not assert . . . that [it] has made any common law use of the JACK & JONES mark . . . ." *Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*, 77 U.S.P.Q.2d 1861, 1864 (T.T.A.B. 2006). Because Bestseller did not claim priority based on use in the United States before the TTAB, it may not do so here.

**c. Priority under the "Famous Marks Doctrine"**

Bestseller's complaint contends: Bestseller has used the "Jack & Jones" mark since 1990, (Pl.'s Am. Compl. 2.); Bestseller has registered five variants of the mark 118 times in forty-six countries and has sixty-nine additional applications pending, (*id.*); Bestseller has sold "[t]ens of millions of articles of clothing" bearing the "Jack & Jones" mark "worldwide," including in the European Union, the Middle East, Russia, and China, (*id.* at 8.); Bestseller "owns twenty-one domain names containing the Jack & Jones trademarks" and operates at least one website that "has been available in English since 1997," (*id.*); Bestseller "has spent millions of dollars" to advertise, promote, register, and protect the "Jack & Jones" mark "worldwide," (*id.*

at 9.); U.S. consumers can purchase Bestseller's products bearing the "Jack & Jones" mark

"through Bestseller's foreign customers and stores as well as through re-sales on eBay.com,"

(*id.*); and finally, the "Jack & Jones" "family of marks has become . . . famous worldwide," (*id.*).

Some courts recognize an exception to U.S. trademark law's "territoriality principle" for

foreign marks that have not been used, but have acquired a certain level of notoriety in, the

United States.[5]  Plaintiff's allegations quoted above implicate this "famous marks doctrine."  No

court in the District of Columbia Circuit has yet considered whether the famous marks doctrine

operates to secure priority of use in the United States to a foreign user, and this Court need not do

so here.  The TTAB's opinion in the instant matter observes that "[Bestseller] does not claim in

its notice of opposition or in response to applicant's motion that its "Jack & Jones mark is

famous under Paris Convention Art. 6(bis)(1)."  77 U.S.P.Q.2d at 1864.  Because the TTAB had

no opportunity to consider this issue on the merits, this Court need not decide whether the

---

[5] Under the territoriality principle, "priority of trademark rights in the United States depends solely upon priority of use in the United States, not on priority of use anywhere in the world."  J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 29:2, at 29-6 (4th ed. 2002).  The Ninth Circuit has recognized an exception to this principle for "famous marks."  *Grupo Gigante S.A. de C.V. v. Dallo & Co.*, 391 F.3d 1088 (9th Cir. 2004).   This exception affords priority in U.S. trademark rights "when foreign use of a mark achieves a certain level of fame for that mark within the United States" such that "a *substantial* percentage of consumers in the relevant American market is familiar with the foreign mark" and the mark has acquired a "secondary meaning [within the U.S.]."  *Id.* at 1093, 1098.  But the Second Circuit has explicitly rejected the "famous marks doctrine."  *ITC Ltd. v. Punchgini, Inc.* 482 F.3d 135, 164 (2d. Cir. 2007).   The court first held that the two international agreements that purport to protect "famous" marks, the Paris Convention and the Agreement on Trade-Related Aspects of International Property Rights, were not self-executing; second, it reasoned that the Lanham Act thus could not implement the protections afforded to famous marks by these agreements.  *Id.* at161-63.  Notably, other Circuits have also concluded the Paris Convention is not self-executing.  *See In re Rath*, 402 F.3d 1207, 1209 (Fed. Cir. 2005); *Int'l Café, S.A.L. v. Hard Rock Café Int'l, Inc.*, 252 F.3d 1274, 1277 n.5 (11th Cir. 2001).

famous marks doctrine is a valid exception to the territoriality principle and if so, whether Bestseller's "Jack & Jones" mark qualifies for it.  *See Mitchell Cosmetics SARL*, 2005 WL 2373371, at \*6; *Gold Seal Co.*, 129 F. Supp. at 937.

## 2. Reversal due to Bestseller's "Superior Equitable Claims"

Bestseller's complaint also refers to its "superior equitable claims to register 'Jack & Jones' in the United States based on its longstanding and widespread use of the mark," as compared with Fame Jeans's alleged non-use.  (Pl.'s Am. Compl. 13.)  Before the TTAB, Bestseller argued its use of "Jack & Jones" abroad should be recognized "in the interest of justice" but offered no authority for such recognition.  *Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*, 77 U.S.P.Q.2d 1861, 1864 (T.T.A.B. 2006).

Plaintiff now calls on this Court to exercise its equity powers on a similar basis, arguing that Congress intended courts "to give considerable weight to the principles of equity when making priority determinations," even when one party may claim constructive use.  (Pl.'s Mem. Opp. to Def.'s Mot. To Dismiss 9.)  Bestseller urges the Court to intervene pursuant to 15 U.S.C. § 1116(a), which it cites as conferring "broad injunctive (i.e., equitable) powers to review trademark disputes."  (*Id.* at 9 n.4.)  There are a number of problems with this argument.

First, section 1116(a) expressly extends only to infringement actions under 15 U.S.C. § 1126(a) and other actions brought by registrants.  15 U.S.C. § 1116(a) (2007).  It does not reach appeals from TTAB decisions concerning oppositions, where neither party is yet a "registrant." *See id.* §§ 1116(a), 1126(a).

Second, Bestseller grounds its equitable claims on its "longstanding and widespread use"

17

of "Jack & Jones" outside the United States (Pl.'s Am. Compl. 13).  As the Court has explained

above, however, territoriality is a bedrock principle of trademark law.  J. Thomas McCarthy,

*McCarthy on Trademarks and Unfair Competition* § 29:2, at 29-6 (4th ed. 2002).  Though

Bestseller offers some authority for its appeal to equity, none of these cases and treatise sections

addresses, much less abrogates, this fundamental principle.[6]  Priority in U.S. trademark rights

depends solely on use within the United States, not use abroad.  *Id.*

Third and finally, plaintiff mistakes the nature of equity.  Equity is an alternative route to

relief for a plaintiff whom the law will not make whole; it is not, however, automatically

available whenever a party perceives some subjective unfairness in the legal outcome.  *See*

*Guaranty Trust Co. v. York*, 326 U.S. 99, 106 (1945) (discussing limitations on courts' equitable

powers).  Indeed, the maxim "he who seeks equity must do equity" has long governed

entitlement to equitable relief in the federal courts.  *See*, *e.g.*, *Manual Enter., Inc. v. Day*, 370

U.S. 478, 526 (1962); *Myers v. Hurley Motor Co.*, 273 U.S. 18, 26 (1926); *Brown v. Lake*

*Superior Iron Co.*, 134 U.S. 530, 535 (1890); *Willard v. Tayloe*, 75 U.S. 557, 574 (1870).  This

principle conditions a party's entitlement to equitable relief on his behavior in accordance with

equitable principles.  *See Mfrs.' Fin. Co. v. McKey*, 294 U.S. 442, 449 (1935) (courts shall not

enforce equitable principles "in favor of one who affirmatively seeks their enforcement except

upon condition that he consent to accord to the other his correlative equitable rights").

---

[6] *See Chandon Champagne Corp. v. San Marino Wine Corp.*, 335 F.2d 531, 534 (2d Cir. 1964) (declining to grant priority based on plaintiff's single-point U.S. sale of "a few hundred cases" of champagne three years before defendant's first sale and twelve years before plaintiff's second sale); 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 16:13 (4th ed. 2002) (describing equity's application in race-to-the-market scenarios, such as when competitors used a mark in the United States within days of one another).

One such principle holds that "equity aids the vigilant and not those who slumber on their rights."  Black's Law Dictionary 875 (6th ed. 1990) (discussing doctrine of laches).  Here, Bestseller's own allegations reveal it has not acted in accordance with this principle.  Bestseller emphasizes its "longstanding and widespread use" of the "Jack & Jones" mark, beginning in 1990, and cites its over one hundred registrations in forty-six countries.  (Pl.'s Am. Compl. 2, 13.)  By mid-2003, it had allegedly "undertaken preparations to use the [] marks in Canada," intending "its Canadian operations [to] serve as a North American base from which to research and coordinate" a U.S. expansion.  (Pl.'s Am. Compl. 7.)  Not until December 6, 2004, however, did Bestseller apply to register the mark in the United States.  (Pl.'s Am. Compl. 10.)

At any time after 1990, Bestseller could have applied to register "Jack & Jones" in the United States under Section 44(e), based on its Danish registration.  *See* 15 U.S.C. § 1126(e) (2007).  In mid-2003, it could have applied under Section 1(b), based on its averred intent to use that mark in the United States.  *See id.* § 1051(b).   Prior to Fame Jeans's January 9, 2004 application, Bestseller had ample opportunity to secure for itself the exclusive right to use its "extremely valuable" marks in the United States.  Plaintiff did not take advantage of this opportunity, and equity will not shield it from the consequences of its inaction.

Hence, this Court does not find that Bestseller's use of the mark outside the United States, however "longstanding and widespread," gives rise to an equitable claim.

## 3. Reversal based on Availability of Additional Evidence

Bestseller's complaint also avers that it "has additional evidence . . . that was not presented to the TTAB, which supports its claims and right to the 'Jack & Jones' mark, including

its research and marketing for use of the mark within the United States." (Pl.'s Am. Compl. 13.) When a party appeals a TTAB decision in district court, it cannot raise new legal issues but may present new evidence not considered by the TTAB. *See* 15 U.S.C. § 1071(b)(3); *Material Supply Int'l, Inc. v. Sunmatch Indus. Co., Ltd.*, 146 F.3d 983, 989-90 (D.C. Cir. 1998); *Mitchell Cosmetics SARL*, 2005 WL 2373371, at *6.

Bestseller is thus free to offer new evidence in this action, but only in support of legal theories it raised before the TTAB. Plaintiffs' complaint does not clearly indicate *how* its "additional evidence" will support its "right to the 'Jack & Jones' mark," nor does it specify with any particularity the *nature* of this "new" evidence. (Pl.'s Am. Compl. 13.) The complaint refers only to Bestseller's "research and marketing for use of the mark within the United States." (*Id.*) Plaintiff's briefs seem to imply that it believes its efforts to lay the groundwork for a U.S. sales launch should qualify as "use[] in the United States," thereby eliminating Fame Jeans's entitlement to constructive use under Section 7(b). (*See* Pl.'s Opp. 11-12; Pl.'s Surreply Mem. 2-3.) *See also* 15 U.S.C. § 1052(d) (2007) (no mark shall be registered that "so resembles . . . a mark or trade name *previously used in the United States by another* and not abandoned, as to be likely" to cause confusion in the marketplace (emphasis added)). Bestseller did not raise this claim before the TTAB. 77 U.S.P.Q.2d at 1864. Plaintiff thus may not raise it here. *See Mitchell Cosmetics SARL*, 2005 WL 2373371, at *6.

Further, to survive Fame Jeans's motion to dismiss, regardless of what Bestseller intends to introduce at a later phase of the proceedings, its complaint must state a claim on which this Court may grant relief. The availability of new evidence does not alone constitute a civil cause of action.

For the aforementioned reasons, the Court must dismiss Count I for failure to state a claim on which relief may be granted.

**B. Count II: Application Void Ab Initio**

In the second count of its complaint, Bestseller charges that Fame Jeans lacked a bona fide intention to use the "Jack & Jones" mark in commerce when it filed its application and that the application was therefore void.  (Pl.'s Am. Compl. 14.)  This allegation is but another attack on the TTAB's priority determination, namely:  Fame Jeans's application was void *ab initio*, so it cannot rely on its application date for constructive use.  (*See id.*)  Bestseller claims "Fame Jeans has never used the Jack & Jones mark in the United States," (*id.*), and absent either constructive or actual use, the TTAB's decision that Fame Jeans may assert priority of use must be erroneous. *Cf.* 15 U.S.C. § 1051 (2007) (permitting trademark registration on the principal register based on "use[] in commerce" or "a bona fide intention  . . . to use in commerce").

To support its bad faith claim, Bestseller alleges the following:  "Bestseller and Fame Jeans are business rivals in the competitive clothing industry," (Pl.'s Am. Compl. 7); the two companies "come into contact and are involved with the same individuals and entities in the Canadian clothing industry on a regular basis," (*id.*); "[u]pon information and belief, Fame Jeans knew that Bestseller planned to expand its operations and use of the Jack & Jones marks in the United States," (*id.* at 7-8); "Fame Jeans knew that Bestseller shortly intended to exploit its well-known and valuable mark in the United States" (*id.* at 14); when Fame Jeans filed its application, it "had never used the Jack & Jones mark in commerce in the United States, or anywhere else," and on information and belief, it has not done so since, (*id.* at 8).  Bestseller also repeatedly

alleges, on information and belief, that Fame Jeans never intended to use the mark and thus falsified its application to the USPTO.[7]  Bestseller further states that "investigation reveals" Fame Jeans does not intend to use the "Jack & Jones" mark in the U.S.  (*Id.* at 14.)

Here again, however, the Court may consider only those legal theories raised before the TTAB.  *See Mitchell Cosmetics SARL*, 2005 WL 2373371, at *6.  The TTAB's opinion below does not indicate Bestseller challenged Fame Jeans's sincerity in applying to register "Jack & Jones" before the Board.  *See Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*, 77 U.S.P.Q.2d 1861 (T.T.A.B. 2006).  Therefore, the Court cannot now consider this argument, and Count II fails to state a claim on which this Court may grant relief.

## C. Count III: Misrepresentation

Count III of Bestseller's complaint contends that Fame Jeans misrepresented its intention to use the "Jack & Jones" mark in its application to the USPTO.  (Pl.'s Am. Compl. 14.) Bestseller supports this theory with the allegations described in Part II(b), *supra*, and by further declaring that Fame Jeans "knew or should have known that its representations in its application were misleading and material[;]" that Fame Jeans intended for the USPTO to rely on its misrepresentation in registration proceedings; and that the USPTO did so rely.  (*Id.* at 15.)  It is

---

[7] (*See*, *e.g.* Pl.'s Am. Compl. 9 ("[u]pon information and belief," Fame Jeans filed its application "in an attempt to thwart Bestseller's planned expansion into the United States and to trade off the worldwide fame and goodwill of the marks"); *id.* at 14 ("[u]pon information and belief, Fame Jeans did not have a bona fide intention under circumstances showing good faith to use the Jack & Jones mark in commerce in the United States at the time it filed [its] Application") ("[u]pon information and belief, Fame Jeans misrepresented its intentions when it" applied to register the mark) ("[u]pon information and belief, Fame Jeans filed [its] application to trade on the substantial good will and fame of Bestseller's marks and to interfere with Bestseller's stated intention to use the mark in the United States")).

unclear from the complaint whether Bestseller intends to suggest another basis for reversal of the TTAB's decision or to bring a separate, common law claim for misrepresentation.

If Bestseller intends to suggest another basis for reversal, its claim would again fail because it did not assert this legal theory before the TTAB and thus may not assert it here. *See Mitchell Cosmetics SARL*, 2005 WL 2373371, at *6; *Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*, 77 U.S.P.Q.2d 1861 (T.T.A.B. 2006).

If, instead, it intends to bring a separate claim, Bestseller confronts a different set of obstacles. As noted above, the Lanham Act confers jurisdiction on this Court to review TTAB decisions,[8] but this grant does not expressly extend to common law claims. 15 U.S.C. § 1071(b) (2007). Rule 8(e)(2) permits a party to "state as many separate claims . . . as the party has" in a single pleading, but each claim must have its own basis for federal subject matter jurisdiction. Fed. R. Civ. Pro. 8(e)(2).

Where, as here, the court has original jurisdiction over a claim brought under a federal statute, it may exercise supplemental jurisdiction over claims that are "so related . . . that they form part of the same case or controversy under Article III of the United States Constitution."[9]

---

[8] The district courts have original jurisdiction in "any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights, and trademarks. 28 U.S.C. § 1338(a) (2007).

[9] In theory, a federal court may also have jurisdiction over a tort claim such as misrepresentation when the parties to that claim are diverse, and the amount in controversy exceeds 75, 000 dollars. *See* 28 U.S.C. § 1332 (2007). Here, however, the only two parties are foreign corporations, (Pl.'s Am. Compl. 1-2), so none of the alternative statutory grounds for diversity is satisfied. *See id.* Further, though plaintiff seeks "monetary damages," the complaint specifies no amount, and plaintiff does not link this demand for relief to its misrepresentation claim. (Pl.'s Am. Compl. 16.)

28 U.S.C. § 1367(a) (2007).  Such a relationship exists where the claims "derive from a common

nucleus of operative fact," and the principal claim is of sufficient substance to confer jurisdiction

on the court.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 735 (1966).  Here, plaintiff's

principal claim seeks reversal of a TTAB decision premised on a finding that Fame Jeans was

entitled to assert constructive use as of its application date.  (Pl.'s Am. Compl. 13.)  Plaintiff's

misrepresentation claim charges false assertions in this same application.  (Pl.'s Am. Compl. 14.)

Both claims turn on, *inter alia*, the truth of that application's averments.  Hence, the Court finds

these claims "derive from a common nucleus of operative fact."  383 U.S. at 735.

Yet supplemental jurisdiction is a discretionary matter.  *Id.* at 726.  A court "may decline

to exercise supplemental jurisdiction over a claim" if, inter alia, that court has dismissed all

claims over which it has original jurisdiction.  28 U.S.C. § 1367(d) (2007).  Here, the court has

found that neither Count I nor Count II of plaintiff's complaint states a claim on which relief may

be granted.  Hence, Count III, misrepresentation, is the sole remaining claim, and the Court

would be well within its discretion to decline jurisdiction and to dismiss this last claim along

with the first two.  Accordingly, the Court declines to exercise supplemental jurisdiction over

plaintiff's common law misrepresentation claim.

Even if the Court were to assert supplemental jurisdiction over the misrepresentation

claim, however, it is clear that Bestseller's complaint does not adequately plead this theory under

the standard set forth in *Bell Atlantic Corp. v. Twombly*.  *See* 127 S. Ct. at 1964-74.

*Twombly* dealt expressly with the appropriate pleading standard under Section 1 of the

Sherman Act, 127 S. Ct. at 1964, and the Court broadly assured that it "do[es] not require

24

heightened fact pleading of specifics," *id.* at 1974.  Yet other district courts have not sought to confine *Twombly*'s teachings to their original context.  *See*, *e.g.*, *Beauty of Flowers v. City of Des Plaines, Illinois*, No. 06 C 5567, 2007 U.S. Dist. LEXIS 37544, at *2, *12 (N.D. Ill. May 22, 2007) (applying *Twombly* to civil rights and constitutional tort claims); *Perry v. Rado*, No. CV-07-5001-LRS, 2007 U.S. Dist. LEXIS 38045, at *6-7 (E.D. Wash. May 24, 2007) (applying *Twombly* to other elements of a Section 1 Sherman Act claim).

Further, Bestseller's misrepresentation claim is, to some degree, analogous to *Twombly*'s conspiracy claim.  In *Twombly*, the plaintiffs, a putative class of telecommunications subscribers, sued the various regional telephone service operators ("the ILECs") created after AT&T's 1984 break-up.  *Id.* at 1961-62.  Plaintiffs' complaint asserted the ILECs had conspired to restrain trade by forming non-competition agreements, but to support this assertion, plaintiffs alleged only parallel, non-competitive conduct by the ILECs.  *Id.* at 1962-63.  The district court dismissed the complaint for failure to state a claim because the plaintiffs had not "allege[d] additional facts that 'ten[d] to exclude independent self-interested conduct as an explanation for defendants' parallel behavior.'" *Id.* at 1963 (quoting 313 F. Supp. 2d 174, 179 (2003)).  Because the complaint alleged no facts to suggest any defendant's non-competitive behavior was contrary to its economic interests, the court found it failed to raise an inference of agreement.  *Id.* (citing 313 F. Supp. 2d at 188).  On appeal, the Second Circuit reversed, agreeing that a complaint must plead facts that render conspiracy plausible but insisting that "'to rule that allegations of parallel anticompetitive conduct fail to support a plausible conspiracy claim, a court would have to conclude that there is *no set of facts* that would permit a plaintiff to demonstrate that the particular parallelism asserted was the product of collusion rather than coincidence.'" *Id.*

(quoting 425 F.3d 99, 114 (2d Cir. 2005)) (emphasis added).  Thus, because a factual scenario in which the parallel conduct arose from non-competition agreements was *conceivable*, the complaint must survive the motion to dismiss.  *Id.*

      The U.S. Supreme Court sided with the district court, likening the plaintiffs' allegations of parallel conduct to "naked assertion[s] of conspiracy" in that they established possible, but not plausible, entitlement to relief.  *Id.* at 1966.  Fatally, despite its factual description of the ILECs' parallel conduct, the complaint lacked "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."  *Id.* at 1965.  To meet this standard, plaintiffs could have, for example, alleged "'complex and historically unprecedented changes in pricing structure made at the very same time by multiple competitors . . . for no other discernible reason.'"  *Id.* at 1966 n.4.  On the facts alleged, the ILECs' non-competitive behavior could have been no more than independent profit-maximization, a natural response to then-existing market incentives.  *Id.* at 1971-72.  Without more, the Court refused to infer collusion.  *Id.*

      The Court dismissed the plaintiffs' complaint because it alleged conduct (parallel, non-competitive behavior) but lacked any facts that would compel an inference as to the *motive* for that conduct.  *Twombly*, 127 S. Ct. at 1971-72.  Similarly, here, Bestseller claims Fame Jeans applied to register the "Jack & Jones" mark merely to thwart Bestseller's planned U.S. launch and thus falsely pledged an intent to use the mark in commerce in its application.  (Pl.'s Compl. 9, 14.)  As Bestseller acknowledges, plaintiff and defendant are business rivals in a highly competitive industry, (Pl.'s Am. Compl. 7), and sales of clothing bearing the "Jack and Jones" mark have proven extremely lucrative overseas, (Pl.'s Am. Compl. 8).  A desire to exploit this profitable mark in one of the world's largest markets, where the mark remained available for

registration, would be a "natural explanation" for Fame Jeans's application to the USPTO.  *See*

*Twombly*, 127 S. Ct. at 1972.

Although Bestseller contends that Fame Jeans's application arose from another motive -

an intent to prevent its rival, Bestseller, from exploiting this valuable mark - it supports this

proposition only with conclusory assertions.[10]  On information and belief, Bestseller suggests

Fame Jeans "knew" it planned a U.S. launch and sought to "thwart" this plan.  (Pl.'s Am. Compl.

7-8, 9.)  Ostensibly, though Bestseller does not explicitly allege as much, Fame Jeans acquired

this knowledge through the parties' mutual, "regular" contact with "the same individuals and

entities in the Canadian clothing industry."  (*Id.* at 7.)  Even if this alleged "contact" explains

*how* Fame Jeans discovered Bestseller's plan, the complaint fails to allege when or by whom the

information was transmitted.  (*See id.* at 7.)  Further, Fame Jeans's alleged knowledge of its

rival's anticipated U.S. launch does not negate a good faith intention to exploit the valuable

"Jack & Jones" mark in this country for itself.  To that end, Bestseller's complaint states: "Fame

Jeans has never used the Jack & Jones mark[,] in the United States and investigation reveals that

it does not intend to do so."  (Pl.'s Am. Compl. 14.)  The Court will not infer bad faith from

Fame Jeans's non-use of "Jack & Jones" because Lanham Act Section 1(b) expressly allows a

person to apply to register a trademark absent prior use in the United States.  *See* 15 U.S.C. §

1051(b) (2007).  Moreover, Bestseller offers no *facts* unearthed by its supposedly revelatory

"investigation."  (*See* Pl.'s Am. Compl. at 14.).  Plaintiff declares it "wishes to obtain further

evidence . . . that would support its allegation that Fame Jeans applied for the mark without the

---

[10] *See supra* note 8.

requisite bona fide intention." (Pl.'s Am. Compl. at 13.) But as the Supreme Court instructed in *Twombly*, to survive a motion to dismiss, a complaint must include "*enough fact* to raise a reasonable expectation that discovery will reveal [further] evidence." 127 S. Ct. at 1965 (emphasis added). Here, plaintiff has provided *no facts* to give rise to such an expectation.

As the Court explained in *Twombly*, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than . . . a formulaic recitation of the elements of a cause of action." 127 S. Ct. at 1964-65 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Here, Bestseller's misrepresentation claim merely recites a formula: "[u]pon information and belief, Fame Jeans misrepresented its intentions when it filed [its] application to register the Jack & Jones mark," (Pl.'s Am. Compl. 14); "Fame Jeans knew or should have known that its representations in its application were misleading and material," (*id.* at 15); "[u]pon information and belief, Fame Jeans made the above misrepresentation . . . with the intent that the USPTO rely on such representation and register the Jack & Jones mark," (*id.*); "the USPTO reasonably (but erroneously as alleged above) relied on Fame Jeans's material misrepresentations, (*id.*); and this reliance led the TTAB to dismiss Bestseller's opposition, (*id.*).

Providing "fair notice" of the nature of its claim, Bestseller alleges each element of fraudulent misrepresentation, *see* Restatement(Second) of Torts § 525 (1977),[11] but its complaint

---

[11] The Court further observes that misrepresentation claims are typically brought by the party or parties who detrimentally relied on the defendant's intentional or reckless material misrepresentation of fact. *See* Restatement(Second) of Torts §§ 525-49 (1977). Plaintiff would extend liability to third parties harmed by the principal's reliance. Courts typically allow third parties to seek cancellation of a mark's registration based on fraud in its procurement. *See*, *e.g.*, *Carmichael v. Prime*, No. 02-0379-C-T/K, 2003 U.S. Dist. LEXIS 6444, at *7-11 (D. Ind. Jan. 6, 2003); *Robert B. Vance & Assocs. v. Baronet Corp.*, 487 F. Supp.790, 800-01 (N.D. Ga. 1979). Courts have also recognized third parties' claims for inequitable conduct premised on

lacks the factual allegations necessary to clarify the "grounds" on which that claim rests, 127 S.

Ct. at 1965 n.3.   Like the plaintiffs in *Twombly*, Bestseller has "not nudged [its] claims across

the line from conceivable to plausible."  *Id.* at 1974.  Therefore, the Court must dismiss Count

III.

CONCLUSION

For the forgoing reasons, this Court concludes plaintiff has failed to state a claim on

which relief may be granted, and the Court must grant defendant's motion to dismiss pursuant to

Federal Rule of Procedure 12(b)(6).

A separate order shall issue this date.


Signed by Royce C. Lamberth, United States District Judge, June 7, 2007

---

misrepresentations to the USPTO.  *See, e.g.*, *Intex Recreation Corp. v. Team Worldwide Corp.*,
390 F. Supp. 2d 21, 24-25 (D.D.C. 2005) (citing *Bristol-Myers Squibb Co. v. Rhone-Poulenc
Rorer, Inc.*, 326 F.3d 1226, 1233 (Fed. Cir. 2003), and *A.T.D. Corp. v. Lydall, Inc.*, 159 F.3d
534, 547 (Fed. Cir. 1998)).  In such cases, however, the plaintiffs typically seek a declaratory
judgment that *an existing registration* is unenforceable.  *Id.*  Here, plaintiff asks the Court to
direct the USPTO to deny defendant's still-pending application and to grant its own, not to
preemptively shield it from liability in future infringement actions defendant may bring if and
when the USPTO grants its registration.  (*See* Pl.'s Am. Compl. 15-16.)  Given the relief sought,
the Court deems the plaintiff's third-party misrepresentation theory dubious, at best.